## The Kentucky State Journal Company v. Workmen's Compensation Board.

(Decided December 11, 1914.)

### Appeal from Franklin Circuit Court.

1. Workmen's Compensation Act—Invalidity of—Employer and Employee—Section 54 Constitution.—While it may be within the power of an employee to waive, by contract, the recovery limit which section 54 of the Constitution inhibits the Legislature from making, if such contract is freely and voluntarily made, the restrictions in this act so limit the right of recovery as to render it violative of the constitution.

2. Constitutional Law.—The Legislature has no right to say to one of its citizens that "unless you accept the provisions of a law impairing your constitutional rights, it will take from you other rights more valuable."

3. Workmen's Compensation Act—Constitutional Law.—In the light of section 54 of the Constitution the contract as provided for in the act must be treated as compulsory and void.

4. Workmen's Compensation Act—Violative of Section 241 of the Constitution.—The provisions of the act that take from the personal representative or estate of deceased employee, who left no one dependent surviving him, any part of the compensation due such person or estate, and directs its payment in the fund provided by

the act for the benefit of others, is in violation of Section 241 of the Constitution.

5.   Workmen's Compensation Act—Constitutional Law—Section 241 of Constitution.—It follows, therefore that such parts of the act as give to the board created by it compensation without the voluntary contract of the employee, the right to recover from the employer for the death of the employee leaving no dependents, and such other parts of the act as are coercive are unauthorized and void.

6.   Workmen's Compensation Act.—While the Court looks with favor upon a workmen's compensation act that would deal justly with employer and employee, one that would permit both to voluntarily take shelter under its provisions, it cannot consent that the Legislature has the power to put such an act into operation by means of compulsory contracts.

BROWN & NUCKOLLS, CHARLES CARROLL, ELMER C. UNDERWOOD and W. PRATT DALE for appellant.

JAMES GARNETT, Attorney General; ROBERT CALDWELL and OTTO WOLFF for appellee.

OPINION OF THE COURT BY SPECIAL JUDGE J. L. DORSEY*
—Reversing.

This case was brought to this court by appeal from a judgment of the Franklin Circuit Court to test the constitutionality of an act generally known as the Workmen's Compensation Act, passed by the Legislature and approved by the Governor, March 21, 1914.

By the provisions of this act a Board of Commissioners is created, composed of the Attorney General, the Commissioner of Insurance, and the Commissioner of Agriculture, Labor and Statistics, and to be known as the "Workmen's Compensation Board."

This act creates a Workmen's Compensation Fund, which is maintained by the various classes of employers mentioned in the act, and such other employers, who, together with their employes, shall apply for the benefits and protection of the act. This fund is created by fixing a rate or premium, during the first year, of not to exceed $1.25 on each $100.00 of the gross annual pay roll of each employer in any class of employers coming within the purview of the act. The Compensation Board has charge

---

*Two of the regular judges, Judges Hannah and Nunn, having declined to sit in this case because of interest, pursuant to Section 117 of the Constitution, Hon. J. L. Dorsey, of Henderson, and Hon. J. M. Lassing, of Newport, were appointed by the Governor as Special Judges.

of this fund and may increase the rate if deemed necessary.

All persons, firms and corporations regularly employing six or more persons for profit for the purpose of carrying on the class of business designated in the act in which such person, firm or corporation is engaged are employers. And persons, in the service of such employers, for the purpose of carrying on such class of business, are employes within the meaning of the act.

It is made the duty of such employers to report to the board the place of their business, the number of their employes, the amount of their pay roll, and such other information desired by the board, by filling out blanks furnished by the board, and returning the same to the board.

These blanks were furnished by the board to the appellant, The State Journal Company, who was the defendant in the court below. But the appellant refused to fill out or return said blanks, and further refused to furnish the board with any information touching the place of its business, the amount of its pay roll, the number of men in its service, or anything else. Whereupon, the appellee brought this suit in the form of a mandatory injunction to compel the appellant to fill out and return the blanks containing such information as was therein mentioned.

The appellant (defendant) demurred to this petition. This demurrer involves the constitutionality of the act. The court below entered a judgment overruling the demurrer, and directed appellant to file and make the report required, from which the appellant appealed.

This act is of too great length to be embraced in this opinion. But the storm center of the fight gathers around Sections 29, 30, 31, 32, and 34, which sections read as follows:

"Sec. 29. It shall be lawful for any employe subject to this Act, including persons under twenty-one years of age, to contract with any employer subject to this Act who elects to pay the premiums herein provided to be paid into said Workmen's Compensation Fund, to accept the compensation provided to be paid to injured employes and the dependents of those killed, and to accept the benefits conferred on employes by this Act, in lieu of any cause of action which he might have, if injured, or that his representative might have if he was thereafter killed through the negligence of his agents, serv-

ants, officers, or employes, and to waive all causes of action against such employer conferred by the Constitution or Statutes of this State or by the common law for his injury or death, occurring through the negligence of the employer or his agents, and such contract shall be binding upon the employer and upon the employe and upon his heirs, personal representatives, and all persons claiming under or through him.

"Sec. 30. Such a contract between an employe and his employer shall be conclusively presumed to have been made in every case where an employer has elected to pay into the Workmen's Compensation Fund, if said employe shall continue to work for said employer thereafter, with notice that the employer has elected to pay into said fund and the posting of printed or typewritten notices in conspicuous places about the employer's place of business at the time of the elections of such employer to pay into the Workmen's Compensation Fund that he has elected to pay into said Workmen's Compensation Fund shall constitute sufficient notice to all such employer's employes then or thereafter employed of the fact that he has made such an election, and the continuance in the service of such employers shall be deemed a waiver by the employe of his rights of action as aforesaid. Except as provided in Section 32.

"Sec. 31. Any employer subject to this Act, electing to pay into the Workmen's Compensation Fund the premiums provided for by this Act shall not be liable to respond in damages at common law or by statute for the injury or death or loss of service of any employe occurring through the negligence of such employer, or his agent, servants, officers or employes, during any period of time in which such employer shall not be in default in the payment of such premiums. Provided, that the injured employe has remained in his service after notice is posted as provided in Section 30, that his employer has elected to pay into the Workmen's Compensation Fund the premiums provided by this Act. The continuance in the service of such employer, or accepting service after such notice shall have been posted, shall be deemed a waiver by the employe of his rights of action, as aforesaid. Except as in Section 32.

"Section 32. Any employe prior to receiving an injury may give notice to an employer who has elected to pay into said fund, that he will not accept the benefits of this Act and waive his right of action as herein provided.

Such notice shall be in writing and served on the employer as provided by the Civil Code for the service of notices, and a copy thereof shall be mailed by the employe to the Workmen's Compensation Board. If thereafter such employe shall be injured or killed while employed by such employer who has elected to pay into the said Workmen's Compensation Fund, and an action shall be instituted against such employer to recover damages for the injury or death of such employe, it shall be sufficient defense thereto and shall bar recovery if the injury of said employe was caused by or contributed to by the negligence of any other employe of said employer, or if the injury was due to any of the ordinary hazards or risks of employment, or if due to any defect in the tools, machinery, appliances, instrumentality or place of work, if the defect was known or could have been discovered by the injured employe by the exercise of ordinary care on his part, or was not known or could not have been discovered by the employer by the exercise of ordinary care in time to have prevented the injury, nor in any event, if the negligence of the injured employe contributed to such injuries. But nothing herein shall deprive such employer of any defense not herein mentioned. If the employer is not in default in payment of premiums and a recovery shall be obtained against him in such action, the said board shall pay on said judgment not exceeding a sum equal to the amount which the said injured employe or his dependents, in case of death, would have been entitled to recover if he had elected to accept the benefit of this Act, and the employer shall receive credit on said payment for the payment made by the board. Such employe, at any time, after he has elected not to accept the benefits of this Act and waive his right of action, as in this Act provided, may withdraw such election and come under the provisions of this Act and accept its benefits and waive his right of action as herein provided, by giving written notice to his employer and to the board; and shall thereafter occupy the same position as if he had originally elected to accept the benefits of this Act and waive his cause of action; provided, that such withdrawal of his election not to accept the benefits of this Act shall not affect the claims for damages against his employer on account of injuries theretofore received; nor entitles such injured employe to be paid anything out of the Workmen's Compensation Fund on account of such prior injury.

"Sec. 34.   All employers subject to this Act who shall elect not to pay into the Workmen's Compensation Fund the premiums provided by this Act, or having elected to pay shall be in default in the payment of same shall be liable to their employes, within the meaning of this act, for damages by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect or default of the employer, or any of the employer's officers, agents or employers, and also to the personal representatives of such employe and in any action by any such employe or personal representative thereof, such defendant shall not avail himself of the following defenses:   The defense of the fellow-servant; the defense of the assumption of risk; or the defense of contributory negligence."

Appellant's contention is that this act is invalid, and while counsel for appellant base their reasons for reversal on many grounds, this court will content itself with an examination and inquiry into the following three grounds:

1.   It is claimed that the act is violative of Section 54 of the Constitution, which provides, "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

2.   The act is compulsory in that both the employers and employes are compelled to accept its provisions, and, being compulsory, it deprives appellant of its property without due process of law, and violates Section 54 of the Constitution.

3.   The act is in contravention of Section 241 of the Constitution, which reads as follows:   "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporation and persons so causing the same.   Etc."

It is provided in Section 29 above that it shall be lawful for any employe (including persons under twenty-one years of age) to contract with any employer who has paid his premium into the fund, to accept the compensation provided in this act to be paid to persons injured and the dependents of those killed, and to accept

the benefits given employes by this act, in lieu of any cause of action which he might have, if injured, or that his representative might have if killed, and also to waive any cause of action he may have against his employer for injury or death occurring through the negligence of his employer or agent, and such contract shall be binding on the employer and employe and upon his heirs and representatives.

Under this section the compensation of the injured man is limited to the amount specified in the schedule of the act. This constitutes a limitation upon the amount of his recovery under Section 54 of the Constitution, providing that the Legislature "Shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property." But we think it is within the power and right of an employe to waive this limit of recovery for injury, by contract, if such contract is freely and voluntarily made.

There may never have been a word or a syllable between the employer and the employe in regard to a contract for employment to labor, yet the act provides that such contract shall be conclusively presumed to have been made between the employer and employe, if the employe continues to work for the employer after the employer has posted notices in some conspicuous places about his place of business to the effect that he has paid his premiums into the fund and accepted the provisions of the act.

We will go a little further and examine the provisions of Section 32 of this act. Suppose the employe, desiring to rely upon the causes of action given him by the Constitution and laws of this State, does not accept the so-called benefits of this act, then, in that event, under Section 32 of this act, the employe, prior to receiving an injury, is compelled to give notice to his employer and to the board that he will not accept the provisions of this act. This notice must be served as provided by the Civil Code for serving notices.

So, if, after this notice has been served, the employe should be injured or killed while in the service of the employer, he or his personal representative may sue his employer to recover damages, then his right to recover is barred by the provisions of this act, if his injury was caused by or contributed to by the negligence of any other employe of said employer, or if the injury was due to any of the ordinary hazards or risks of the

employment, or if due to any defect in the tools, machinery, appliances, instrumentality or place of work, if the defect was known or could have been discovered by the injured employe by the exercise of ordinary care on his part, or was not known or could not have been discovered by the employer by the exercise of ordinary care in time to have prevented the injury, nor in any event if the negligence of the injured employe contributed to such injuries.

Now, when his right to recover is restricted by such qualifications and conditions as these, we think these qualifications and conditions constitute, within the meaning of Section 54 of the Constitution, not only a limitation upon the amount to be recovered, but practically destroy his right to recovery.

When an injured employe elects to decline the compensation given him by this board, why should he be denied these causes of action—why penalized in this way? To this there is but one answer, and that is, it was the purpose and intent of this act to compel an employe to accept its provision and take the compensation allowed by the board in lieu of any cause of action he might have against his employer for his injuries.

When the employer accepts the provisions of this act, the employe is automatically drawn into this so-called contract and made subject to its provisions upon pain of being deprived of all his causes of action. It cannot then be said that he has voluntarily elected to accept the provisions of the contract, because he is told that unless he accepts the provisions of this act he will be deprived of all these causes of action. This certainly imposes a limitation upon his right to recover within the meaning of Section 54 of the Constitution.

His election should be free, not even in the alternative. The law has no right to force him to accept the compensation fixed by this board by depriving him of his causes of action. The only remedy left to him is to accept what he can get from this Compensation Board.

The action of the employer in paying into this fund his premiums and accepting the benefits of this act necessarily brings the employe within the act. The employe can go nowhere else, he has been legislated out of his causes of action, and all he can do is to accept such amount as it allowed him by this Board of Compensation. The Legislature has no right to say to one of its

citizens that "unless you accept the provisions of a law impairing your constitutional rights, it will take from you other rights more valuable."

In the light of Section 54 of the Constitution, we must treat the contract made by the employe under the provision of this act as compulsory and therefore void.

If any employer should determine that he wanted to carry his own risk and make his own contracts instead of having the law to make a contract for him, he can do so. He can operate his industries and pursue his business, however hazardous, and ignore this act entirely. But what is the result? The law says to this employer: "You may go on with your business industries, but if one of your employes is injured or killed, you shall not avail yourself of the following defenses— the defense of the fellow-servant; the defense of the assumption of risk; or the defense of contributory negligence."

These are practically all the defenses the employer has, and they are taken from him unless he accepts the provisions of this act. He cannot, under these conditions, successfully defend any suit for personal injury. If he is sued by an injured employe, about the only question a jury will have to determine will be the amount of recovery.

Under these conditions an employer has practically no choice, no volition. If he continues to operate his business, he is compelled to pay his premiums into the fund and accept the provisions of the act.

It has been well said in one of the briefs:

The employer is told, "You may refuse to accept the provisions of this act, but if any suit is instituted against you for injuries received by your employes, you are deprived of all defenses thereto, and to all intents and purposes a default judgment will be rendered against you."

We cannot subscribe to the proposition that this is a voluntary contract, even on the part of the employer.

The act under consideration is further vigorously assailed because, as contended by appellant's counsel, it contravenes Section 241 of the Constitution of the State of Kentucky. Section 241 reads as follows: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death from the corporations and persons so causing same.

Until otherwise provided by law, the action to recover such damages shall, in all cases, be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.''

If an injury to an employe should result in his death, his personal representative is authorized to recover damages from the negligent person or corporation causing his death. This is an absolute right given by this section of the Constitution to his personal representative to recover damages for such negligence as has resulted in his death. And it is immaterial, under this section of the Constitution, whether the money recovered goes to the children or parents, or becomes a part of his personal estate. The disposition of the money after his death cannot affect the right of the personal representative to recover. It may go to his heirs, or it may become a part of his personal estate and go to his creditors.

By Section 42 (and sub-sections thereunder) of this act, the wife and children under sixteen years of age are presumed to be dependents of the deceased employe. But Section 42 and its sub-sections further provide that no person shall be considered a dependent unless a member of the family of the deceased employe or bears to him the relation of widower or widow, lineal descendants, ancestors or brother or sister. Section 42 of this act also provides that, if the deceased employe had no descendants, the disbursements from the compensation fund shall be limited to his nursing, medical and funeral expenses. It then gives to this Compensation Board the sole right of action to recover from the employer (who has accepted the benefits of the act) for the death of this employe who had no dependents.

And Section 43 of this act provides that no person except sole dependents of the deceased employe shall receive any benefit from this fund, and that, if such employe left no dependents surviving, the amount that would be due and payable to his dependents, had any survived him, shall be paid or credited to this compensation fund for the benefit of the class to which such employe belonged.

It seems clear to us that such parts of this act as take from the personal representative or estate of a

deceased employe, who left no dependents surviving him, any part of the compensation due such representative or his estate, and directs its payment into this fund for the benefit of other people, is a violation of the above Section 241 of the Constitution. The Legislature has no right to limit the damages recovered, for the death of an employe negligently killed, to his dependents. Nor do we think the Legislature has the right to take what is due the estate of one man and give it to another.

While the Legislature may say how the recovery may go and to whom it shall belong, it cannot say this recovery may be had from the employer, then in the next breath give it to this fund.

It then necessarily follows that such parts of this act under consideration as give to this Board of Compensation, without the voluntary contract of the employe the right to recover from the employer for the death of the employe leaving no dependents, and such other parts of the act as coerce the employe to consent or to make a contract that such compensation shall be paid into this compensation fund, are unauthorized and void.

Many States in the Union have adopted a Workmen's Compensation Act. And these acts, together with the decisions of the various courts construing them, have been discussed by counsel in their briefs.

We have been referred to the Workmen's Compensation Act passed by the Legislature of the State of Washington and construed by the Supreme Court of that State in an able and exhaustive opinion found in the case of State ex rel v. Clausen (65 Wash., page 156). This Washington act is strikingly similar to the Kentucky act now under consideration before us, except that if a party felt himself aggrieved he was given an appeal to the Superior Court of the county of his residence, and then given the right to call a jury.

This Washington act was held by the court in the above cause not to be compulsory, although it took away from the employer the defenses of assumed risk, negligence of a co-employe and contributory negligence.

There being no constitutional restrictions, the Legislature of the State of Washington had the power to enact the statute above referred to, and it was upheld by the State Supreme Court.

The Legislature of the State of Ohio adopted a similar Workmen's Compensation Act. But here the injured employe had the right to have a jury fix his compensation within the limits and under the rules prescribed by the act. The Supreme Court of Ohio, in Yaple v. Creamer (97 N. E., 602), upheld the act.

The Wisconsin Supreme Court, in Borgnis v. Folk Co. (147 Wis., 327), held that a provision of the Workmen's Compensation Act of that State which took away from the employer who refused to accept the provision of the act the defenses of assumed risk and negligence of a co-employe, was not compulsory. The same view was held in the case of Ives v. South Buffalo Ry. Co. (201 N. Y., page 271). These rulings were put upon the ground that these defenses were not constitutional guarantees, but could be abolished by the Legislature. But the New York act was held invalid because it did not preserve to the employer the "due process" of law guaranteed by the Constitution.

The State of New York now has a compensation act similar to the one before us, but it was especially authorized by an amendment to the New York Constitution.

It will be observed here that there was no constitutional provision in the Constitution of Washington, Ohio, Wisconsin, or New York similar to Section 54 of the Kentucky Constitution, which denied to the Legislature of the State of Kentucky "the power to limit the amount to be recovered for injuries resulting in death or for injuries to person" or property.

The Workmen's Compensation Act in all of the States above named, as well as in New Jersey, Massachusetts and California, differ from the Kentucky act, in that there is an appeal granted to the State courts, or a jury is permitted to fix the amount of compensation.

This is the first Workmen's Compensation Act ever passed by our Legislature, consequently we have no decisions in this State to guide us, nor do the Compensation Acts of the other States furnish us very much light, because the Constitutions of these States materially differ from the Constitution of Kentucky. The Kentucky Constitution has limitations and restrictions above referred to that are not found in any of these States which have adopted Compensation Statutes. And, for this reason, a lengthy discussion of other compensation

acts would be superfluous. This court is bound by the limitations contained in the Kentucky Constitution.

The counsel for appellant fiercely assail the purpose and operation of this act for many other reasons. They complain of the meager compensation it gives to the injured employe; that it deprives him of a jury trial; that employers are compelled to pay into this fund $1.25 as a premium on each $100.00 pay roll, and, as a result, only employers doing an extra hazardous business will take under it; that corporations whose operations are not extra hazardous will carry their own risks by the aid of indemnity companies, and by reason of which this compensation fund is liable to suffer depletion, and if an employe receives an injury, his compensation is doubtful. It is also claimed that, as this is a common fund, kept up by the contributions of employers, that they will grow careless in selecting their machinery, as well as in their operations, and that the lives and limbs of the employes will suffer greater risks and injuries. A sufficient answer to all this is, that these are matters addressed entirely to the wisdom of the Legislature and can be regulated as necessities may require.

The right of the State to regulate the management of industries arises from the fact that their operation may affect injuriously the health, safety, morals or welfare of persons engaged in such employments. And these come within the police power of the State, a power sometimes difficult to understand, and usually more difficult to define. It is contended for appellee that the act in question grows out of the pursuit and control of industries, by reason of which its operations come within the police power of the State. This is perhaps true, and the Legislature has the right to create a compensation board and put it into operation free from the objectionable features of the present act.

This court looks with great favor upon a Workman's Compensation Act that would deal justly with the employer and employe, one that would permit both to voluntarily take shelter under its provisions. And it is not the purpose of the court or the intention of this opinion to lay down any rule that will preclude the Legislature from enacting a compensation act that will conform to the Constitution, as we are clearly of the opinion that the Legislature may, in conformity to the Constitution, adopt an effective compensation law. But this court cannot consent that the Legislature has the power to put

this compensation act in operation by means of compulsory contracts.

Whether the constitutional restrictions herein above discussed are wise or unwise, this court is bound to obey them. It has been well said by an eminent judge that, "The Constitution is the paramount law; the Judge, Legislature, and every citizen are bound by it. The powers of legislation are limited by it; the rights of the citizen are guaranteed and protected by it; and the courts are bound by their oaths to enforce it."

This court believes the act in question violates the Constitution of our State, and it must, therefore, be held invalid.

The judgment of the lower court is reversed.

Chief Justice Hobson and Justices Miller and Lassing dissent.

### DISSENTING OPINION BY JUDGE MILLER.

The opinion of the majority of the court is of such far-reaching importance that I feel justified in giving the reasons for my dissent from the conclusions there reached; and, in doing so, I will be as brief as the necessities of the case will permit. The opinion of the majority makes it impossible for the Legislature to pass any effective Workmen's Compensation Act, under our present Constitution.

The Kentucky Workmen's Compensation Act was approved March 21, 1914. Acts 1914, page 226. It is a very elaborate statute, of 75 sections, providing for the creation of the compensation fund, and its administration, in every detail.

The Compensation Board created by that act instituted this action for the purpose of obtaining a mandatory injunction directing the defendant, The State Journal Company, an employer of labor within the State, and whose business is enumerated in Section 15 of the act as subject thereto, to furnish the board certain information relative to its business.

The circuit court sustained the act, and the defendant appeals.

Counsel for appellant have gone at great length into the merits of the act.

Under my view of the province of this court's powers and duty, the wisdom or propriety of the act is not before us; we are to pass only upon the questions of law; upon the constitutionality of the act.

It is sufficient to say that this court has repeatedly held that the fairness or wisdom of an act is a legislative question; and, without citing the many authorities which establish so elementary a proposition, it may be sufficient to refer to the language of this court in the late case of the Eastern Kentucky Coal Lands Co. v. Commonwealth, 127 Ky., 717, where we said:

"There are a number of other objections made to the statute by appellant, all of which may be grouped under the general complaint that it is harsh, oppressive, and unjust. Were these objections well grounded, they would afford no basis for relief at the hands of the court. The policy of the Legislature may be looked into by the courts for the purpose only of interpreting statutes. If, then, they are found to be within the power of the Legislature to enact, the business of the court is ended. * *

"It is not tolerable in our form of government, with its distinct separation of powers, that acts of the legislative branch should stand or fall according as they appealed to the approval of the judiciary; else one branch of government, and that the most representative of the people, would be destroyed, or at least completely subverted to the judges."

The courts must necessarily assume that legislative discretion has been properly exercised. Cooley's Constitutional Limitations, 7th Ed., page 257.

In the interpretation of statutes it is an elementary rule of construction that all laws enacted by the Legislature are presumed to be valid, and that it is the duty of the courts to declare them valid unless they *clearly* transgress some limitation upon the power of the Legislature, imposed by the State or Federal Constitutions.

The public policy of a State is expressed in its Constitution and Statutes, and in its common law as found in the opinions of its court of last resort; and, if the Constitution or Statutes speak upon a subject, the public policy of the State is fixed to that extent.

If we were permitted to consider the reasons which actuated the Legislature in passing this act, they might easily be found in the generally conceded harshness of the common law rules governing the liability of employers to employes injured while engaged in service, which was forcibly stated by Chief Justice Winslow, of the Supreme Court of Wisconsin, in deciding Driscoll v. Allis-Chalmers Co., 144 Wisc., 468, where he said:

"It gives me no pleasure to state these long estab-
lished principles of law of negligence. I have no fond-
ness for them. If I were to consult my feelings alone,
I would far prefer to let the case pass in silence. No
part of my labor on this bench has brought such heart-
weariness to me as that ever-increasing part devoted
to the consideration of personal injury actions brought
by employes against their employers. The appeal to
the emotions is so strong in these cases, the results to
life and limb and human happiness so distressing, that
the attempt to honestly administer cold, hard rules of
law which either deny relief entirely or necessitate a
new trial, make draughts upon the heart and nerves
which no man can appreciate who has not been obliged
to meet the situation himself. If it be said that some of
these rules are archaic and unfitted to modern industrial
conditions, I do not disagree; in fact, that has been my
own opinion for long. Upon reflection it seems that this
could not be otherwise. Principles which were first laid
down in the days of the small shop, few employes and
simple machinery, could hardly be expected to apply with
justice to the industrial conditions which now sur-
round us."

The basic principle underlying the laws of this char-
acter, of which the Kentucky act is typical, is, that the
business of the country should bear the financial burden
of all industrial accidents rather than the workmen who
happen to be the victims of particular accidents. The
question of direct fault is not considered. The fact alone
that the victim suffers loss of wages or bodily impair-
ment, entitles him to compensation, unless the injuries
received are due to his own willful negligence.

Under the common law, damages for personal inju-
ries are recoverable only when the accident was due to
the fault of the employer or of his servants; and, in
many cases, a recovery cannot be had even though the
employer or his servants had been negligent, if the em-
ploye had been guilty of contributory negligence. This
method of adjusting individual rights is necessarily ex-
pensive, uncertain and unsatisfactory to all parties con-
cerned.

But, whether the Legislature acted for the reasons
above suggested, or for any of them, if it had the right
to pass the act in question, the case is ended so far as
this court is concerned.

With this limitation in view, I will consider, as briefly as possible, the principal objections urged against the constitutionality of the act.

It is urged that the act is compulsory in that it, in effect, compels the employer and the employe to accept its provisions under penalty of losing their rights under Sections 54 and 241 of the Constitution, which read as follows:

"54.   The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

"241.   Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death from the corporations and persons so causing the same.   Until otherwise provided by law, the action to recover such damages shall, in all cases, be prosecuted by the personal representative of the deceased person.   The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person."

As I understand the majority opinion, this is the only ground upon which it holds the Kentucky act of 1914 invalid.   It tacitly overrules the many other constitutional objections urged against the act.

Section 29 provides that any employe, subject to the act, may contract with his employer, who is subject to the act, and who elects to pay the premiums provided thereby, to accept the compensation provided by the act for injured employes in lieu of any cause of action which he or his representative might have, arising from the negligence of his employer, or his agents or servants, and to waive all causes of action against said employer conferred by the Constitution or Statutes of this State, or by the common law, for his injury or death occurring through the negligence of the employer or his agents.

Section 30 provides that such a contract between an employe and employer shall be conclusively presumed to have been made in every case where an employer has elected to pay into the fund, if such employe shall continue to work for the employer thereafter with notice that the employer has elected to pay into the fund; and the posting of printed or typewritten notices in conspicuous places about the employer's place of business at the time of the election by the employer to pay into the

fund, that he has so elected, shall constitute sufficient notice to all of his employes of the fact that he has made such an election; and the continuance in the service of such employer shall be deemed a waiver by the employe of his right of action, except as provided in Section 32.

Section 32 provides that any employe, prior to receiving an injury, may give notice to his employer, who has elected to pay into the fund, that he will not accept the benefit of the act and waive his right of action as provided thereby, such notice to be served on the employer and a copy mailed to the Compensation Board. If, thereafter, the employe shall be injured or killed while in the service of the employer, who has elected to operate under the act, and an action shall be instituted against the employer to recover damages, the employer may rely upon the defenses of contributory negligence, assumed risk, and the fellow-servant rule.

Section 34 provides that an employer who shall not elect to pay into the Compensation Fund the premiums provided by the act, shall not, in a suit against him for personal injuries or death of an employe, avail himself of the defenses of assumption of risk or contributory negligence.

It will thus be seen that the act makes it voluntary whether any employer shall accept the provisions of the act on the one hand, or whether the employe shall work for, or remain in the service of, his employer after the latter has made his election to work under the act, taking from the employer, however, his common law defenses above specified in case he declines to work under the act, and saving to the employer those defenses against his employe who refuses to accept the provisions of the act.

It is contended that these provisions compel both the employer and the employe to accept the provisions of the act, by taking away their constitutional rights in case they refuse to come within the act.

Many of the earlier laws were compulsory in form, and sought to compel employers and employes to accept them in lieu of their former remedies.

The New York Act, which was held to be unconstitutional in Ives v. South Buffalo Ry. Co., 201 N. Y., 271, Ann. Cas. 1912B, 157, was, by its terms, compulsory.

In the Ives case, *supra*, the New York Court of Appeals held the act unconstitutional because its compul-

sory features denied the parties due process of law, both under the State and the Federal Constitutions.

It was further held in that case, however, that the abolition of the common law defenses, the classification of industries, and the granting of new remedies to the employe, were all permissible; and, further, that the act was not an undue exercise of the police power.

Later, in State v. Clausen, 63 Wash., 156, 37 L. R. A. (N. S.), 466, the Supreme Court of Washington upheld a compulsory act embodying the same features which the New York Court of Appeals had held were fatal to the New York act. The Washington court expressly repudiated the reasoning employed by the New York court.

Still later, in Cunningham v. Northwestern Improvement Co., 44 Mont., 180, 119 Pac. 554, the Supreme Court of Montana sustained a compulsory act as against the objections to it, based upon its exercise of the police power, and that it attempted class legislation, illegal taxation, denial of jury trial, due process of law, and the delegation of judicial authority. The Montana act was, however, held unconstitutional solely upon the ground that it denied the employer the equal protection of the laws, in that the compensation system was, as to him, exclusive, while the employe might, after receiving the injury, elect to renounce the provisions of the act and proceed in his action at law for damages against his employer, who had already been required to purchase insurance in the State fund.

In the meantime, the Wisconsin Compensation Law was enacted, with the elective features of the Kentucky act; and the same objection was there made as is now here made, that the act was compulsory in its effect.

But, in overruling that objection, and in sustaining the act, the Wisconsin Supreme Court, in Borgnis v. Folk Company, 147 Wis., 327, 37 L. R. A. (N. S.), 500, said:

"Passing from these questions of classification, we meet the objection that the law, while in its words presenting to employer and employe a free choice as to whether he will accept its terms or not, is, in fact, coercive, so that neither employer nor employe can be said to act voluntarily in accepting it. As to the employer, the argument is that the abolition of the two defenses is a club which forces him to accept; and, as to the employe, the argument is that, if his employer ac-

cepts the law, the employe will feel compelled to accept also, through fear of discharge if he do not accept.

"Both of these arguments are based upon conjecture. Laws cannot be set aside upon mere speculation or conjecture. The court must be able to say with certainty that an unlawful result will follow. We do not see how any such thing can be said here. No one can say with certainty what results will follow in the practical workings of the law. It may well be that many manufacturers, especially those employing small numbers of employes and in the less dangerous trades, will deliberately conclude that it will be better business policy to exercise greater care in guarding their employes from possible danger, and greater discrimination in the employment of careful men, and reject the law entirely, running the risk of being able to prevent all, or nearly all, accidents. It seems extremely probable that the great bulk of workmen, especially of the unskilled classes, will be glad to come under the act and thus secure a certain compensation in case of injury, in place of that very uncertain and expensive thing, namely, the final result of a lawsuit; but, whether this be so or not, it may be considered as reasonably certain that very many will elect to come under the act voluntarily and freely, and that those who do not will probably come from the ranks of skilled labor, who will deem the rates of compensation under the law as entirely inadequate, or will be careful workmen in the less dangerous trades, who will see no gain in bartering their common-law rights for the restricted remedies furnished by the statute. It cannot be said with any certainty that such men will be discharged for their failure to voluntarily come under the law. The probability would seem rather to be that they would be of a class which the employer would wish to keep in his employ, notwithstanding their attitude towards the law. These matters are, however, purely speculative and conjectural. None can say what the practical operation of the law will be. It is enough for our present purpose that no one can say with certainty that it will operate to coerce either employer or employe."

Laws containing the elective feature have been enacted in Ohio, New Jersey, Wisconsin, Minnesota, Iowa, Massachusetts and Illinois, where they have been upheld by the courts; and in Michigan, Connecticut, Kansas, West Virginia, Oregon, Nebraska, Nevada, New

Hampshire, Rhode Island, Louisiana, and Texas, where no decisions have yet been made.

The Ohio Compensation Act was likewise elective in its provisions; and in State v. Creamer, 85 Ohio St., 349, 39 L. R. A. (N. S.), 694, the constitutionality of the Ohio act was attacked upon the ground that it was coercive, and deprived persons of their freedom of contract and of their property without due process of law, and that it was not sustainable under the police power. All of these objections were overruled, and the act was sustained throughout.

In answer to the contention that the statute was coercive, the Supreme Court of Ohio said:

"It is urgently insisted that while the law is apparently permissive, and leaves its operation to the election of employers and employes, it is really coercive, and upon this premise much persuasive argument against the validity of the law is based. This is an important question in the case.

"An examination of the section touching the questions made is here necessary. After providing, in Section 20-1, that an employer who elects to comply with the act shall be relieved from liability to the employe at common law or by statute (except as provided in Section 21-2), it is then enacted in Section 21-1: 'All employers who shall not pay into the insurance fund, * * shall be liable to their employes for damages * * * caused by the wrongful act, neglect, or default of the employer, his agents,' etc. And in such cases the defenses of assumption of risk, fellow-servant, and contributory negligence are not available. So that an employer who elects not to come into the plan of insurance may still escape liability if he be not guilty of wrongful act, neglect, or default. His liability is not absolute, as in the case of the New York statute hereinafter referred to. And it cannot be said that the withdrawal of the defenses of assumption of risk, fellow-servant, and contributory negligence, as against an employer who does not go into the plan, is coercive, for such withdrawal is in harmony with the legislative policy of the State for a number of years past. The law known as the Norris law, passed in 1910, withdrew these defenses in the particulars covered by the law.

"As to the employe, if the parties do not elect to operate under the act, he has his remedy for the neglect, wrongful act, or default of his employer and agents,

as before the law was passed, and is not subject to the defenses named. If the parties are operating under the act, the employe contributes to an insurance fund for the benefit of himself or his heirs, and, in case he is injured or killed, he or they will receive the benefit, even though his injury or death was caused by his own negligent or wrongful act, not willful. And that is not all. Under Section 21-2, if the parties are operating under the act, and the employe is injured or killed, and the injury arose from the willful act of his employer, his officer or agent, or from failure of the employer or agent to comply with legal requirements as to safety of employes, then the injured employe, or his legal representative, has his option to claim under the act or sue in court for damages. Therefore, the only right of action which the statute removes from the employe is the right to sue for mere negligence (which is not willful or statutory) of his employer, and it is within common knowledge that this has become in actual practice a most unsubstantial thing.

"It is conceded by counsel that the particulars named in Section 21-2 are such as form the basis for a large portion of claims for personal injuries. Many employers may elect to remain outside its provisions; it would not be strange if many do so. On the other hand, some workmen may feel disposed to do likewise in spite of what would seem to be to their manifest advantage in securing the benefits of the insurance. However, if there should be such general acceptance of and compliance with the statute as its framers hope for, so as to bring a large part of the labor employed in the industrial enterprises of the State within its influence and operation, that would not demonstrate its coercive character. On the contrary, it would justify the enactment. Naturally time and experience will disclose imperfections and inefficiencies in the plan; but if it should prove to be feasible and appropriate in a general way, these imperfections can be corrected by the Legislature. On account of the common law and statutory rights still preserved to the parties by this statute (as we have pointed out), in cases where the election is made to come under its provisions, as well as not to do so, taken in connection with the advantage to each which the plan contemplates, we cannot say that the statute is coercive. As was said in the Wisconsin case: 'Laws cannot be set aside upon mere speculation or conjecture. The court must be able

to say with certainty that an unlawful result will follow.' (147 Wis., 327.) We do not see how any such thing can be said here. Every consideration of prudence and self-interest (things not easily associated with compulsion and coercion) would seem to lead an employe to voluntarily make the contribution and waiver contemplated.''

And, in closing its opinion in the Creamer case, *supra,* the Supreme Court of Ohio said:

"It is suggested that this legislation marks a radical step in our governmental policy not contemplated by the Constitution, and which it is the duty of the court to condemn. But it creates no new right, or new remedy for wrong done. It is an effort to in some degree answer the requirements of conditions which have come in an age of invention and momentous change. The courts of the country, while firmly resisting encroachment on the Constitution in the past, have yet found in their ample limits sufficient to enable us to meet the emergencies and needs of our development, and we do not find that this statute goes beyond the bounds put upon the legislative will.''

Again, the same question was decided the same way in Re Opinion of Justices, 209 Mass., 607.

The Massachusetts Compensation Law contained like elective provisions, and it was likewise attacked as being, in fact, compulsory. But, in answer to that objection, the Massachusetts Justices contrasted the Massachusetts act with the New York statute, saying:

"There is nothing in the act which compels an employer to become a subscriber to the association, or which compels an employe to waive his right of action at common law and accept the compensation provided for in the act. In this respect the act differs wholly so far as the employer is concerned from the New York statute above referred to. By subscribing to the association an employer voluntarily agrees to be bound by the provisions of the act. The same is true of an employe who does not choose to stand upon his common law rights. An employer who does not subscribe to the association will no longer have the right in an action by his employe against him at common law to set up the defense of contribuory negligence or assumption of the risk, or to show that the injury was caused by the negligence of a fellow-servant. In the case of an employe who does not accept the compensation provided for by

the act, and whose employer has become a subscriber to the association, an action no longer can be maintained for death under the employers'. liability act. *But these considerations do not constitute legal compulsion or a deprivation of fundamental rights.* We do not deem it necessary to take up and consider in detail the numerous provisions by which the right to compensation and the amount thereof and the persons entitled thereto, and the course of procedure to be followed and matters relating thereto, are to be settled and determined. We assume, however, that the meaning of Sections 4 and 7 of part 3 of the proposed act is that the approved agreement or decision therein mentioned is to be enforced by proper proceedings in court, and not by process to be issued by the industrial accident board itself. Taking into account the non-compulsory character of the proposed act, we see nothing in any of these provisions which is not 'in conformity with' the Fourteenth Amendment of the Federal Constitution, or which infringes upon any provision of our own Constitution in regard to the taking of property without due process of law.''

To these cases there should be added the late case of Matheson v. Minneapolis Street Ry. Co., decided July 13, 1914, and reported in 148 N. W., 71, which unanimously sustained the Minnesota Workmen's Compensation Act of 1913, containing the elective features, after an exhaustive review of all the constitutional objections that could be urged against it.

In speaking generally of objections made to the Illinois Compensation Act, the Supreme Court of that State, in Deibeikis v. Link Belt Co., 261 Ill., 465, 104 N. E., 211, said:

''The other objections urged may all be answered by the statement that the act is elective and not compulsory. Were the act deprived of its elective feature and made compulsory upon every employer and employe engaged in the enterprises enumerated in Section 2, very different and more serious questions would be presented. Being elective, the act does not become effective as to any employer or employe unless such employer or employe chooses to come within its provisions.''

Without further elaboration, it is sufficient to refer to Sexton v. Newark Dist. Tel., 84 N. J. Law, 85, 86 Atl., 451, and to Hawkins v. Bleakley, Fed. (not yet reported), wherein the elective acts of New Jersey and Iowa were sustained, as not being coercive.

In no case has an elective compensation act been held invalid; on the contrary, statutes containing elective features substantially like the Kentucky Statute have expressly been upheld in Wisconsin, Ohio, Massachusetts and Minnesota; while Washington and Montana have gone further and sustained compulsory acts.

Kentucky is to be the first State making this radical departure; and, in doing so, this court fails, it seems to me, to mark the essential legal distinction between compulsory and elective acts, by giving more effect to imaginative cases than to real cases.

It may be readily conceded that if the act were compulsory, it would be inimical to the sections of the Constitution last above referred to; but, when it has been demonstrated that the act is elective only, and not compulsory in its provisions, all of these constitutional objections relating to the exercise of the police power, reasonable classification, taking property without due process of law, depriving one of a jury trial, etc., disappear as having no application to the case; they can only apply when the act is compulsory. I do not understand it to be claimed that parties may not agree to waive their constitutional or legal rights. To refuse them that right would, in itself, be unconstitutional, as depriving them of the right of free contract.

These objections to elective acts have been ably and exhaustively discussed in the cases from New Jersey, Wisconsin, Massachusetts, Ohio, Minnesota and Illinois, above referred to, and, in each instance, many, if not all, of the constitutional objections have been raised; and in every case overruled.

The fact is not to be overlooked that the elective feature of the act, which is made the controlling question in the majority opinion in this case, is not inimical to any provision peculiar to the Kentucky Constitution; the elective feature is to be given the same effect under the Constitutions of the various States wherein compensation laws have been passed; the real question being in each case whether the act is, in fact, compulsory. If it is not compulsory, but elective, then all these constitutional objections necessarily disappear. It does not meet the argument to say that provisions like Sections 54 and 241 of the Kentucky Constitution are not found in other Constitutions.

In view of the uniform line of decisions to the effect that the elective clause is elective and not compulsory,

I am of the opinion that the Kentucky Compensation Act is a valid and enforcible law, and should not be set aside upon a mere speculation or conjecture.

As was said in Matheson v. Minneapolis Street Ry. Co., *supra*:

"We shall not stop to discuss the shortcomings and unsatisfactory results of the law of negligence as applied to present day industrial conditions; nor the desirability of providing more certain, effective, and inexpensive relief for injured workmen than the present common law actions afford; nor the economic reasons for imposing upon an employer, not because he is at fault, but as a burden incident to his business, the obligation to contribute to the support of employes disabled through injuries received in the course of their employment. Much consideration has been given to these questions by publicists and students of industrial, economic and social problems; and it has become generally recognized that the common law fails to make adequate or equitable provision for the economic loss resulting from a disability which deprives the workman of his earning power. But changes in the laws, and in the public policies recognized in the laws, must emanate from the lawmaking power and not from the courts. The courts must administer the law as they find it, not as they may think it ought to be. Hence arguments showing the need for a change in the laws governing the relations of master and servant should be addressed to the legislative and not to the judicial branch of the government. The briefs have given considerable attention to these legislative questions, but it is sufficient, for present purposes, to say that the arguments advanced furnish ample basis for legislative action under the police power of the State; and that laws enacted for the purpose of adjusting and determining the respective rights and obligations of employer and employe may make radical innovations in pre-existing policies and rules of law, so long as they do not infringe some constitutional guaranty.

"In considering the question now before the court, it is proper to say, at the outset, that all laws enacted by the Legislature are presumed to be valid; and that it is the duty of the courts to declare them valid, unless they *clearly* transgress some limitation upon the power of the Legislature imposed by the State or Federal Constitution. Roos v. State, 6 Minn., 428 (Gil., 291); State v. Corbett, 57 Minn., 345, 59 N. W., 317, 24 L. R. A., 498;

Lommen v. Minneapolis Gaslight Co., 65 Minn., 196, 68 N. W., 53, 33 L. R. A., 437, 60 Am. St. Rep., 450; Union Pacific Ry. Co. v. United States, 99 U. S., 700, 25 L. Ed., 496; Powell v. Pennsylvania, 127 U. S., 678, 8 Sup. Ct. 992, 1257, 32 L. Ed., 253.''

Believing, as I do, that the majority opinion of the court is not sustained by reason or precedent, but is directly contrary to both, I have felt it proper, on account of the importance of the case, to give the reasons for my dissent.

Chief Justice Hobson and Judge Lassing concur in this dissent.