## McCune v. Pell and Brother.

(Decided June 14, 1921.)

Appeal from Jefferson Circuit Court
(Common Pleas, Fourth Division).

1. Master and Servant—Workmen's Compensation Act—Elective Statute.—The workmen's compensation act of 1916 is an elective and not a compulsory statute, and neither employer nor employe

is brought under its provisions until they voluntarily accept them.

2.  Master and Servant—Election by Employe—Signing Notice.—Election by the employe to operate under the provisions of the act is effected by his signing the notice prescribed by section 74 of the act, contained in printed form in the employer's register. Such signing of the register by the employe makes his acceptance of the provisions of the act effective from, and including, the date of signing.

3.  Master and Servant—Finding of Board—Evidence.—The finding of the workmen's compensation board in this case that the appellant's decedent did not upon entering the employment in which he met his death, or while engaged therein, elect to operate under the provisions of the compensation act by signing the employer's register, is sustained by the evidence; hence, the award of the board rejecting appellant's claim to compensation under the act for his death will not, on appeal, be disturbed.

4.  Master and Servant—Election of Employe—Signing Notice.—Where, as in this case, the decedent had several years prior to his death upon entering the service of the same employer, elected to accept the provisions of the compensation act by signing the employer's register, but thereafter quit the service of the latter and entered into, and for sixteen months continued in, the employ of another in a different state, and then re-entered the service of the first employer, his signing of the register under the first employment in acceptance of the provisions of the compensation act, did not, if he wished to accept its provisions under the last employment, relieve him of the necessity of making his election to do so, by again signing the employer's register, upon undertaking the last employment.

CHARLES W. MORRIS for appellant.

ERNEST W. SPRAGUE for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The object of this appeal is to obtain of this court a review of an award of the workmen's compensation board and a judgment of the Jefferson circuit court affirming the award. The facts as found by the board from the evidence and upon which its award was based are as follows: The appellant and petitioner for the compensation refused by the board is the widow and dependent of Richard McCune, deceased; the appellees are contracting painters engaged in business in the city of Louisville. Richard McCune, a painter by occupation, fell from a scaffold and was killed February 15, 1919, while in the employ of and at work for the appellees. McCune

had at times, included within a period of ten years prior to May 14, 1917, been employed in the performance of like work by appellees; but on May 14, 1917, upon again, beginning work for them as a painter, after an interval of nonemployment, he elected, as was his right, to operate under the statute known as the "Workmen's Compensation Act" by then signing the employers' "compensation register" declaring such election and purpose. On July 13, 1917, about two months later, McCune was dismissed from appellees' employ for lack of work for him to perform, and he thereupon obtained work at the quartermaster's depot, Jeffersonville, Indiana, where he continued work under contract of employment until November 15, 1918, or for a period of sixteen months, during which sixteen months appellees had work at which they could or might have employed McCune.

After McCune quit work at the quartermaster's depot in Indiana, he was, on November 15, 1918, again employed by appellees, and beginning with such contract of employment November 15, 1918, he constantly worked for them until his death February 15, 1919, receiving weekly during that time wages averaging $22.10 per week. When employed by appellees, November 15, 1918, McCune admittedly did not sign the compensation register, nor did he at any time thereafter do so.

After concluding its discussion of the evidence with the statement that "According to the testimony in this case, McCune considered the advisability of signing (the register) and deliberately concluded not to sign," the board thus set forth its formal findings of fact:

"1.    Plaintiff's decedent at the time of the accident had not accepted the provisions of the workmen's compensation act.

"2.    On May 14, 1917, he signed the compensation register as an employe of defendant. That particular employment ceased on July 13, 1917, and for a period of sixteen months he worked in the quartermaster's depot at Jeffersonville, Ind. On November 15, 1918, he again commenced work for the defendant, but did not sign the compensation register."

The board's ruling of law upon the foregoing findings of fact was as follows:

"It is established by the terms of the act itself and by judicial determination that there must be an election on the part of the employe as to whether he will operate un-

der the act; and, if he elects to operate thereunder, such election must be evidenced in writing.''

Appearing beneath which is the award, signed by the members of the board, declaring: ''The petition for adjudication of claim is dismissed.''

As previously stated, the award of the board was approved or affirmed by the circuit court upon a review of same and the evidence by that court, and upon the appeal to this court its duty is limited to consideration of the single question, whether or not the facts as found and law applied thereto support the award. Ky. Stats., section 4935, subsection 52; section 4936, subsection 53. In Phil Hollenbach Co. v. Hollenbach, 181 Ky. 285, it is declared, respecting the legal effect of the board's findings of fact: ''We perceive no material distinction between the findings of fact required to be made by a compensation board and that of a court or jury, and we believe such finding of fact of the board is entitled to the same weight as that of a properly instructed jury. This we conceive to be the general rule adopted by courts throughout the states of this country where the workmen's compensation law is in force.''

While counsel for appellant substantially admits the correctness of the board's findings to the effect that the decedent had signed the compensation register under a former employment of him by the appellees May 14, 1917, that he severed his relation with appellees as an employe July 13, 1917, and for sixteen months continuously thereafter was employed in another state by a different employer, and that upon his return to this state, November 15, 1918, he was again employed by appellees under a new contract, different as to amount of wages from that of his employment of May 14, 1917, but without then or at any time thereafter signing the register evidencing his intention to operate under the workmen's compensation act, he contends (1) that the appellees' employment of the decedent from start to finish was ''intermittent,'' and during his sixteen months' absence, ''temporarily suspended,'' within the meaning of these terms as employed in section 74 of the compensation act; (2) that the decedent did not sign the compensation register upon being employed by appellees November 15, 1918, because of an oral agreement between them that such signing of the register then was unnecessary as it had been signed by the decedent at the time of his former employment May 14, 1917.

Without discussing in detail the evidence found in the proceedings before the board, and which, in the absence of fraud or misconduct on the part of its members, or some of them, was the only evidence that was, or could be, considered by the circuit court, we are unable to find that it satisfactorily established the oral agreement referred to. It only shows that the decedent was requested by the employer to sign the register and that he declined to do so, giving as a reason that it was unnecessary as he had once before signed it. Following this declination of the decedent there was no attempt of the employer to persuade him to sign the register; at most it cannot be said that the failure of the employer to insist upon his signing it or his expression of uncertainty as to the necessity for his doing so, amounted to anything more than acquiescence in the decedent's refusal to sign; and we do not think such acquiescence of the employer can excuse the admitted disregard by the employe of a mandatory provision of the statute requiring him, if he would avail himself of the benefits of the workmen's compensation act, to make his election to operate thereunder by signing the compensation register to evidence that fact. We are of opinion, therefore, that the finding of the workmen's compensation board that ''McCune considered the advisability of signing and deliberately concluded not to sign'' was warranted by the evidence.

While the appellees, owing to the previous satisfactory services of appellant's decedent, may have been willing after he quit their employ July 13, 1917, to have him resume work for them whenever their business would justify his re-employment, or may have expected him to again enter their service at some future time, these things did not alter the facts that his employment by them ended when he quit their service July 13, 1917; that the severance continued sixteen months, during which time he was in the employ of another in a different state, and that when at the end of that time he re-entered appellees' employ it was not under a previous or existing contract, but under a new and distinct contract then made which differed in its terms from any theretofore agreed upon by the parties. The only way McCune could give the notice required by subsection 74, section 4957, Ky. Stats., of his election to operate under the compensation act was by signing the compensation register containing such notice opposite the signature of the employer.

Contained in the record is an opinion written by the judge of the circuit court presenting the conclusions of law and fact supporting his judgment affirming the award of the workmen's compensation board, the soundness of which so amply demonstrates the correctness of that judgment that we have concluded to take the unusual, though by no means unprecedented course, of adopting such of it as here follows as a part of our opinion in the case at bar:

"It is clear that the constitutionality of the present compensation act is based upon the facts that the acceptance of the act is, under its terms, a purely voluntary matter of election by the employer and employe, and that each and all of the provisions of the act become effective and binding upon employer and employe solely through this voluntary acceptance, which, in effect, when made by both, becomes an agreement or contract between the parties. Without this acceptance by both employer and employe the act cannot, nor can any of its provisions, apply to either. (See State Journal Co. v. Workmen's Compensation Board, 161 Ky. 562; Green v. Caldwell, 170 Ky. 571.)

"Therefore, it is apparent that the all-important matter at the very threshold of the relation of employer and employe is that of preserving in some form indisputable evidence of the acceptance or nonacceptance of the act by each. It needs no argument to demonstrate how important such indisputable evidence is to the employe, for he is not only the chief beneficiary of the act, but is the one whose rights must frequently depend upon the preservation of such evidence. Death or even disability of the employe might, in many cases, render it impossible to prove the acceptance, unless the evidence is preserved in some indisputable form. If it were not so preserved acceptance of the act might frequently be disputed after the employe has suffered injury, and great injustice might be suffered by such an employe who had depended upon the act for his protection. The legislature, therefore, sought to put this matter of evidence of acceptance of the act beyond the possibility of dispute. To this end it provided in section 73 of the act that the employer should evidence his election by signing and filing with the board a written notice to that effect, the terms of which are stated in the act; and it is further provided in section 74 of the act that the employe should evidence his election by signing a certain written notice to that effect, the

terms of which are set forth in the act.  As to employes, the act (section 74) further provides that the election on their part 'shall be effective from and including the date of signing, which shall be inserted opposite the employer's signature.'

"It is apparent, therefore, from these carefully drawn provisions that it was the purpose of the legislature to leave no room for dispute between the parties or as between them, or either of them and the insurance companies carrying the risk concerning the election of the employer and employe.  If the written notice was signed and preserved as the act directs this evidence of acceptance is conclusive and final.  If no such written notices are signed as the act provided this fact is conclusive evidence that no acceptance was made.

"After the election has been made by both there are but two methods of withdrawing the election.  One is the method provided for in the act itself (section 76), that is, by the written notice therein mentioned, which evidently, so far as the employe is concerned, contemplates the continuance of the relation of employer and employe.  The other method is the one that necessarily grows out of the constitutional right of the parties to sever their relation of employer and employe.  As the act applies only to those who occupy the relation of employer and employe, it necessarily follows, therefore, that when that relation ceases to exist the act ceases to apply, except in so far as may be necessary to enforce the rights thereof acquired under the act.

"While on the one hand the evident purpose of the legislature by the provisions above referred to was to establish certainty, prevent disputes and thereby protect both employe and employer, the plaintiff's interpretation of the terms 'intermittent' and 'temporarily suspended,' and her attempted application of that interpretation to the case at bar, if upheld would lead to a maze of uncertainties, would give rise to frequent disputes and would destroy in many cases the main purpose of the legislature, evidenced by these carefully prepared provisions above referred to.  To apply the term 'intermittent' to a case like that at bar, where the relation between the employer and employe was completely and absolutely severed for sixteen months, and the employe during that interval had left the state and taken employment under another employer in another state, or to apply the term 'temporarily suspended' to that interval of sixteen

months during which absolutely no contractual relation existed between the employer and employe, and no intention to return on the one hand or to employ on the other is shown to have existed during that sixteen months, would be to give meanings to those terms entirely different from the ordinary and generally accepted meanings of those words.

"The commonly accepted meaning of 'intermittent' comprehends short intervals between acts or conditions. The word 'temporarily,' used to modify the word 'suspended,' clearly refers to a suspension for a short interval of time. Any other definition of those terms would lead to an absurdity, because it would destroy the very purpose of the legislature in requiring that indisputable evidence of the acceptance of the act should be preserved. If an interval of sixteen months, under the conditions shown by the record in this case, could be termed a temporary suspension, or if the two employments, separated by the interval of sixteen months, could be termed 'intermittent,' then the court knows of no reason why an interval of two years or five years or ten years might not, by the same process of reasoning, come within the same construction. The matter might be carried still further, and say that if an employe once signed a register he would, by this process of reasoning, be excused from signing it again at any time during his life while working for the same employer, although there may be five or ten or twenty years between the employments. The court is clearly of the opinion that when the words 'intermittent' and 'temporarily suspended' are given their usual and ordinary meanings, they have no application to the case at bar and do not govern the rights of the parties.

"The court is of the opinion that the board was correct in its opinion that after the plaintiff's decedent had completely severed his relations with the defendant and had gone to another state and entered the employment of another person or of the government in that other state, and had been so engaged for sixteen months, and had at the end of that period returned to Kentucky and entered into a new contract of employment with the defendant upon different terms from the former employment, the employe was put to his election to accept or not accept the compensation act. He had the right at that time to do either. If he elected to accept the act under this employment, the statute required him, as evidence of that acceptance, to sign the notice provided for in section 74.

He could accept the act only in the manner provided by the statute. Neither the act nor any other law of this state gave to him or to the employer any right to waive that important provision of the statute. Therefore, any agreement between the parties that their former signatures should be considered as an acceptance under the last employment was an absolute nullity, and can have no effect in the case. If the requirement of the statute could be waived by an oral agreement in this case then it could be waived in any other case, and the purpose of the statute concerning the preservation of this important evidence would be destroyed.

"The fact that the application of the law may work a hardship in a particular case is not an argument for the suspension by the court of the law or its application. If the court should give the interpretation to the act urged by the plaintiff, and that decision should be upheld, one of the main purposes of the act would be destroyed and the gates would be opened in probably hundreds of cases where the vital interests of employes would be opposed to the interpretation now contended for by the plaintiff in this case and their material rights would be jeopardized.

"In addition to what has been said above, the fact must not be lost sight of that section 4946 requires every employer under the act to either insure his liability for compensation in some insurance company authorized to transact the business of workmen's compensation in this state, or shall make arrangements satisfactory to the board, by the deposit of acceptable security, indemnity or bond to secure the payment of such compensation liabilities as are incurred. The court knows, as a matter of common knowledge, that a great majority of employers in this state insure their liability, and it appears from the record in this case, by the reference in the board's memorandum opinion to the question of the rights of insurance companies in such cases, that it is probable that the risk was so carried in this case.

"Insurance companies and sureties on indemnity bonds or other bonds to secure the liability of the employer to pay compensation can be held bound only when the provisions of the act under which the bond is given have been complied with. The compensation act becomes a part of such contract of insurance and such contracts of indemnity or security just as if the terms of the act are written into said contract. So the matter of the evi-

dence of the acceptance by the employe of the act is not simply a question between the employer and employe.

"This matter differs from the ordinary contractual relation between two persons concerning matters foreign to this act. While in ordinary contracts the parties thereto have a right to waive certain formalities the question of waiver may then become merely a matter of evidence between them. But, where a statute requires a thing to be done in a certain way, and the doing of that thing in the way provided by statute involves not only the rights of the actors but the rights of other persons, it is imperative that the thing shall be done in the manner provided by the statute, and the actors—such as employer and employe in cases like that at bar—cannot waive the mandatory provisions of the statute by an oral agreement or understanding such as is contended for by the plaintiff in this case."

As it is our conclusion that the judgment of the circuit court affirming the award of the compensation board rejecting the appellant's claim for compensation and dismissing her petition properly determined the rights of the parties, it is affirmed.