## Hicks et al. v. Conn et al.

(Decided Oct. 26, 1937.)

H. C. KAUFFMAN and L. L. WALKER for appellants.

GREEN CLAY WALKER and T. J. UNDERWOOD for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

In a local option election held in Garrard county on April 6, 1937, the vote for the adoption of the law was 1,538 and against it 469. A contest was filed by J. T. Hicks and S. J. Herron upon several grounds, but all were abandoned except those relating to the publication of the notices. The judgment sustained the election.

The statute (section 2554c-5) provides that the sheriff shall advertise the election by posting handbills in not less than five conspicuous places in each precinct of the county for at least two weeks before the election. In three precincts the notices were posted, at the instance of the sheriff, by G. B. Swinebroad. The appellants recognize the decisions of this court that the essential and material thing is that the notices were posted, and the fact that others than the sheriff posted them is immaterial. Campbell v. Mason, 269 Ky. 128, 106 S. W. (2d) 100. They say, however, that the evidence establishes that Mr. Swinebroad had participated in the preparation of the petition and otherwise had been actively interested in the election, and because of this interest he was disqualified from doing this service, under the Civil Code of Practice provision (section 624) that a notice must not be served by a party or one interested in the action. The two situations are not analogous and the argument is not meritorious.

The sufficiency of the number of notices which had been posted was questioned. Two witnesses testified they did not see any notices in certain places, and one that he had fully covered the county and saw none at all. The contestees' evidence, however, abundantly proved a full compliance of the law in this respect.

The local option statute (section 2554c-5) provides that, after the county clerk has given the sheriff a certified copy of the order of the county court calling an election,

> "It shall then be the duty of the said sheriff to have same published in some weekly or daily newspaper published in the county for at least two weeks before the election, and also to advertise same by written or printed handbills posted at not less than five conspicuous places in each precinct of the county for the same length of time when the election is held for the entire county. * * * In case there is no daily or weekly newspaper published in the county, or the proprietor of such newspaper refuses to publish said advertisement, the printed or written handbills posted as herein provided for shall be sufficient."

Four weeks or more before the election the sheriff took a copy of the order to the manager of the sole local newspaper and requested him to publish it in accordance with its terms. The order fully stated the duties of the officer in relation to advertising the election and the time it should be done. Although Seymour B. Goodman, the manager of the newspaper, testified he was not specifically requested to publish the order in the issue of March 18th, the trial court, upon the entire evidence, reached the conclusion that the sheriff had made such request and the manager of the newspaper had failed to publish the order in that issue through oversight. We concur in that finding of fact. The newspaper is published every Thursday. The next edition of March 25th and the following one of April 1st carried the notice. The election being held the following Tuesday, April 6th, the advertisement had appeared only twelve days before the election. We have construed the phrase "for at least two weeks" to mean for fourteen days. Cassady v. Jewell, 268 Ky. 643, 105 S. W. (2d) 810.

This provision of the current local option statute as to the time and manner of publication of the order

calling the election, including the stipulation that if a newspaper proprietor "refuses" to publish it the posted notices shall be sufficient, is the same as that in the former local option law. Section 2555, 1915 Edition, Kentucky Statutes. It is identical or very similar to many other statutes relating to special elections to authorize the issuance of bonds or to change the form of municipal government. Among them are sections 3235c-29, 3480b-3, 3480b-29, 3480c-19, 3480c-50, 3606b-3, 3606b-29, 3606c-2, 3606c-34, 3235dd-18, and 3235dd-49, Statutes. But as to what shall be deemed a refusal to publish the advertisement apparently has not been hitherto determined. The circuit court was of the opinion that the circumstances accompanying the omission of the publication of this advertisement on March 18th was a refusal within the meaning of the statute; therefore that the terms of the act had been complied with.

The officer performed his duty in leaving with and requesting the proprietor of the newspaper to publish the order. There is no suggestion in the evidence that anything had been brought to his attention to lead the sheriff to think that the notice would not be published on the 18th until the newspaper was issued and distributed. He could not know that the publication would not be made. It is undisputed that he promptly went to the office of the newspaper to make inquiry. We may well adopt the reasoning and conclusion of Judge Alcorn in his construction of this provision of the law, namely:

"It was contended in oral argument by counsel for plaintiffs that this provision should be limited strictly to a refusal to publish. But should it? It seems to me that what the legislature evidently intended by this provision was, that where the officer had done his duty with regard to getting the notices published by the newspaper, and the newspaper failed to publish the advertisement, then proper publication by handbills would satisfy the statute. Any other interpretation would, in my opinion, tend to make futile the purpose sought to be accomplished by the statute. Suppose the sheriff left the notice with the newspaper for publication, the editor agreed to publish it, but thereafter determined not to make it, and the publication was not made. Is it to be held that under those circumstances this provision of the statute would become operative only in event the editor afterwards, and before the

time for the advertisement to be made, notified the sheriff that he would not make it? I hardly think any one would seriously contend that this provision would not apply to such a situation. And yet, logically, that is where the contention of plaintiffs would bring us, for they would make the statute apply if the failure to publish was wilful, but not so if the failure was an oversight on the part of the editor, making the application of this proviso in the statute turn upon whether the newspaper deliberately failed to publish, or simply failed to publish. But in either event the failure to publish would be attributable, not to the officer, but to the newspaper authority, and to ignore that fact—the very thing the statute is plainly guarding against—and to constrict the interpretation of the idea conveyed in the statute by its provisions regarding refusal to publish, to a literal refusal, would assuredly illustrate the truth of the maxim that 'the letter killeth, but the spirit giveth life.' But the courts are not under the necessity, in construing a statute, of literalizing it, if to do so would frustrate the object intended to be served by the statute. 'The natural import of words is their literal sense; but this may be greatly varied to give effect to the fundamental purpose of a statute.' Lewis' Sutherland Statutory Construction, Second Edition, Vol. 2, sec. 374, page 717. To the same effect is Hardy v. Russell, 181 Ky. 287, [204 S. W. 145]. For these reasons, it is my opinion that even if the newspaper publication as made was not a substantial compliance with the statute, the facts bring this case within the provision of the law relative to refusal to publish.''

We might add the thought that there was no way for the court to have compelled the newspaper to publish the advertisement of the election or to penalize the proprietor for not doing so.

The word ''refuses,'' like many other words in our language, is elastic and is of somewhat varied signification according to the context in which it is found and the nature of the subject matter to which it refers. Refusal usually implies a previous demand or request or the existence of circumstances equivalent thereto. But, as stated in Mackey v. U. S. (C. C. A. 6) 290 F. 18, to ''refuse'' does not necessarily imply to deny deliberate-

ly a previous demand. One of the general definitions of "refuse" is to "withhold." Webster's New International Dictionary. The word has been given judicial construction as being a synonym of failure. We held in Thomas v. Commonwealth, 74 S. W. 1062, 25 Ky. Law Rep. 201, that it was not error to instruct that, if defendant "failed" to leave the house of deceased, the latter had the right to use such force as was necessary to eject him instead of using the word "refused." The failure to give bond in a bastardy proceeding was held equivalent to a refusal to do so. Rudulph v. State, 16 Ga. App. 353, 85 S. E. 365. Where a municipal board took no action upon a claim against the county, it was held to be a refusal to allow it. Board of Supervisors of Jefferson County v. Lessing, 129 Miss. 1, 91 So. 697. Failure to file a corporation's report in time required by law constitutes a refusal to do so. Sherman v. Finance Corporation, 78 Colo. 330, 241 P. 722. The failure of a property owner to lay sidewalks within the time prescribed in an order requiring their construction and with which he had been served was held to amount to a refusal within the meaning of the statute providing that the city could have same done if the owner refused to lay the sidewalk. City of Bluefield v. McClaugherty, 64 W. Va. 536, 63 S. E. 363.

We think it would be a strained construction of the statute to say that there must be a definite or deliberate purpose of the proprietor of a newspaper not to publish the advertisement of the election and that such purpose must have been made known to the officer who otherwise would have the right to expect upon reasonable grounds that his request would be accepted.

The circuit court's judgment sustaining the election was also put upon the ground that, in any event, there had been a substantial compliance with the statute and that such degree of compliance is sufficient. It is not necessary for this court here to express an opinion upon that conception, for we concur in the view that the circumstances of this case constituted a refusal to publish the order by the proprietor of the newspaper within the meaning of the statute, and, since the handbills were duly posted during the entire time, the advertisements met the demands of the statute.

Judgment affirmed.

Whole court sitting.