**MILLER DAIRY PRODUCTS COMPANY,**
Appellant,

v.

**Henry PURYEAR et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 1, 1957.

Rehearing Denied March 21, 1958.

Waller, Threlkeld, Whitlow & Byrd, Henry Whitlow, Paducah, for appellant.

J. Brandon Price, Paducah, for appellees.

CAMMACK, Judge.

The appellant, Miller Dairy Products Company, instituted this action in the McCracken Circuit Court seeking a judgment for specific performance which would require the appellees, Henry Puryear, Mrs. Andre Pingon and Andre Pingon, to convey fee simple title to a piece of property in Paducah. The appellant relied upon an installment contract containing an option to purchase which was claimed by the appellees to be a lease. This appeal is from a judgment dismissing the complaint.

The appellant urges reversal upon the grounds that (1) the clear terms of the writing entitled it to purchase the property despite any attempted cancellation; (2) equitable principles do not permit a forfeiture as attempted by the appellees; (3) the appellees have waived and are estopped to assert a forfeiture; (4) its tender of performance was more than adequate; and (5) the appellees can not set up incompetency of a former joint owner (a party to the writing) as a partial defense.

The appellees contend that (1) the writing was a nonseverable lease agreement with an option to purchase; (2) the appellant's default in rental payment terminated the lease and the purchase right; and (3)

they did not waive their right to declare a forfeiture.

The pertinent paragraphs of the writing follow:

"After the payment of the ten annual installments recited herein as ground rental, the lessee is hereby granted the right to purchase the fee simple title to the property herein described for Seven Thousand and No/100 ($7000.00) Dollars. Said purchase option may be exercised at any time during the tenure of this agreement but not later than six months from the termination thereof. It is the intent and purpose of this provision that at any time the lessee shall have paid to the lessor Thirteen Thousand Six Hundred and No/100 ($13,600.00) Dollars within ten years and six months from the date of this agreement, the lessors will execute in favor of the lessee a general warranty deed to said property.

"The lessee covenants to comply with all city laws and ordinances in regard to nuisances insofar as the premises are concerned and that it will not by any of its acts or those of its subtenants (if any) render said lessor liable therefor. No demands for rent need at any time be made on said premises or elsewhere, but it shall be the duty of the lessee to seek the lessor, and pay same when due, without demand. Should the lessee fail to pay the rent in full within fifteen (15) days after the same becomes due, then the lessor shall have the right to enter and take possession of said premises, and no notice to quit or demand for the premises shall be necessary to recover possession of same.

"Should the lessee continue to occupy said premises after the expiration of said term, tenancy shall be one of sufferance on a month to month basis.

"This agreement, at the option of the lessor, shall be void and forfeited in case of any violation on the part of the lessee of any stipulation herein contained."

At the time the writing was executed in 1945 Mr. Puryear owned an undivided $9/15$ interest in the property, and his aunt, Mrs. S. T. Hubbard, an incompetent, owned the remaining undivided $7/15$ interest. Mrs. Andre Pingon signed the writing as committee for her mother, Mrs. Hubbard, and for herself individually, and Mr. Pingon signed for himself. Mrs. Hubbard died in 1947 and her interest passed to Mrs. Pingon who, along with her husband, conveyed it to Mr. Puryear in March, 1954. Puryear is the principal party in interest and his conduct with the Pingons was about as sharp as it was with the appellant.

The parties signed the writing on June 1, 1945, and the first annual rental of $660 was paid on June 30th of that year. The rental payments were due on June 1 of each year but only two of the nine made were paid when due. The overdue rental payments were made as early as June 3rd and as late as July 10th. Five times between 1947 and 1953 Mr. Puryear wrote the appellant reminding it that the rental was due. On June 16, 1954, one day after the 15 day grace period, having received no payment for that year, Mr. Puryear wrote the appellant a letter in which he undertook to cancel the agreement by invoking the forfeiture clause.

The appellant protested the attempted cancellation immediately and on June 19th tendered Mr. Puryear a check for the last annual installment of rent and the cash amount of $4,438 for his $9/15$ interest, which tenders were refused. The appellant, through Mr. Paul Miller, then called upon Mr. and Mrs. Pingon, in Franklin, to tender them the amount due for their $7/15$ interest and learned that this entire interest had been conveyed to Mr. Puryear. On the next business day, June 21, 1954, the appellant tendered to Mr. Puryear $8,320 for his entire interest. (Due to error in calculations, the amount tendered

was in excess of the amount called for in the agreement.) This tender was refused also as were further offers and demands for a deed. This suit followed.

The appellant argues that it was entitled to purchase the property despite Mr. Puryear's attempted cancellation because under the clear terms of the writing its right to purchase did not end until six months after an effective termination; and because a forfeiture, as attempted by Mr. Puryear, will not be permitted under equitable principles.

When viewed as a whole, the writing purports to be a lease agreement. Under such an agreement it is difficult to imagine that the parties could have intended that the lessee, without paying any rental, could purchase the property any time within 10 years and six months from its date upon payment of $13,600. Admittedly, this is not what happened, but to hold that the writing was separable would mean that the parties intended such an event could happen. We believe the language granting the option to purchase was subject to the later provisions of the writing, and that the final paragraph permitted an effective termination of the rights of the lessee at the option of the lessor upon the lessee's violation of any of the lease stipulations; failure to pay the 1954 rental in the case at hand.

Ordinarily, courts do not favor forfeitures, and they construe them strictly against the party who invokes them. Hogg v. Forsythe, 198 Ky. 462, 248 S.W. 1008. But, in the absence of circumstances justifying relief, courts do not make contracts different from those that the parties make for themselves, even when forfeiture provisions are harsh. Blue Ridge Coal Co. v. Hurst, 196 Ky. 432, 244 S.W. 892.

The appellant argues that the appellees waived their right to declare a forfeiture through previous acceptances of late rental payments, and that they are estopped from claiming that it should have sought them out when the rentals became due because in other years they had sent reminders. Although an acceptance of a late rental payment in any one particular year would have waived the forfeiture provision for that year, we cannot say that the appellees thereby waived all future right to invoke the forfeiture clause. See Annotation 31 A.L.R.2d 321, pp. 383–385. Furthermore, we do not believe the appellant was justified in relying upon the written reminders sent by Mr. Puryear when the rent was due. The express terms of the writing placed upon the appellant the duty of seeking the lessors when rentals became due. In his deposition for the appellant Mr. Miller admitted that any misunderstanding of these terms was due to neglect on his part.

We agree with the appellant's view that the forfeiture provision in this lease is harsh; however, provisions allowing termination of a lease upon non-compliance with its terms are valid. 32 Am. Jur., Landlord & Tenant, section 848. An unusually strict provision may have been considered necesssary in this case in order to protect the interest of an incompetent person. Through its own neglect the appellant failed to comply with the admittedly harsh provisions requiring payment of rent without demand within 15 days after the due date. It so failed several times during the life of the writing and the lessors were within their strict legal rights when they invoked the forfeiture clause and cancelled the agreement on the occurrence of the lessee's last delinquency in rent payment.

Since the cancellation was effective, it is unnecessary to discuss the adequacy of tender of payment made after that cancellation, or the question of the validity of the writing because of Mrs. Hubbard's incompetency at the time of its execution.

Judgment affirmed.