Margie **RELIFORD**, Administratrix of the Estate of Henderson G. Reliford, Deceased, Appellant,

v.

**EASTERN COAL CORPORATION,**
Appellee.

No. 13284.

United States Court of Appeals
Sixth Circuit.

June 26, 1958.

On Petition for Rehearing Nov. 10, 1958.

Dan Jack Combs and F. Dale Burke, Pikeville, Ky., for appellant.

J. Peyton Hobson, Jr., Pikeville, Ky. (Hobson & Stephens, Pikeville, Ky., Albert S. Kemper, Jr., Bluefield, W. Va., on the brief), for appellee.

Before ALLEN and MILLER, Circuit Judges, and MATHES, District Judge.

ALLEN, Circuit Judge.

This appeal attacks a judgment of the District Court entered in an action based upon a contract executed July 5, 1941, by the United Mine Workers, hereinafter called UMW, and defendant Eastern Coal Corporation, hereinafter called Eastern, which covered the rights of all miners employed by Eastern. Plaintiff's decedent, hereinafter called Reliford, worked in Eastern's coal mine at Stone, Pike County, Kentucky, from July 7, 1936, until June 28, 1951. During the entire time, as required by the contract between UMW and Eastern, Reliford was a member of UMW and that union was his bargaining agent. He filled various mine occupations, such as motorman, boom man, and for a number of years was "shooting" coal. On June 28, 1951, Reliford retired because he was advised by several doctors that he had contracted silicosis.

The contract, executed July 5, 1941, between The Operators Association of The Williamson Field, of which Eastern was a member, and the local and international unions UMW, covered the general field of problems between labor and management in the coal industry. While it was denominated "Wage Agreement," it contained detailed provisions not only for wages but also for numerous subjects, such as management of mines, preparation of coal, safety practices, duties of engineers and pumpers, seniority, holidays, and adjustment of house rents. It contained a no-strike provision under which the miners were individually obligated to assist in preventing local strikes.

The particular provision involved herein required the employer to provide its employees with the benefits of the Kentucky Workmen's Compensation Act. In 1941 in Kentucky these benefits did not cover occupational diseases. However, in 1944 the Workmen's Compensation Act was amended to provide that in silicosis cases employers and employees could voluntarily subject themselves to the Act by filing a joint, voluntary application with the Workmen's Compensation Board, KRS 342.005(2). On July 1, 1947, the wage agreement of Eastern and the unions was amended to conform to the change in the statute and the provision obligating employers to provide the benefits of the Act to employees was changed to read as follows:

"Workmen's Compensation and Occupational Diseases"

"Each Operator who is a party to this Agreement will provide the protection and coverage of the benefits under Workmen's Compensation and Occupational Disease Laws, whether compulsory or elective, existing in the states in which the respective employees are employed. Refusal of any Operator to carry out this direction shall be deemed a violation of this Agreement. Notice of compliance with this section shall be posted at the mine."

The situation that resulted for employees was that if they registered under the Workmen's Compensation Act they were automatically protected as to accidental injuries or death. As to disability or death resulting from silicosis, however, the filing of the joint, voluntary application by both employer and employee

**450**

was an indispensable prerequisite to securing the benefits of the Act. KRS 342.005. In a silicosis case, absent the election by either the employer or the employee to operate under the Act, the Workmen's Compensation Board had no jurisdiction. The fact that the application was voluntary left the claimant who asserted that he was suffering from an occupational disease free, either to sue at common law subject to the usual defenses of contributory negligence, the fellow-servant rule, and assumption of risk, or to proceed under the Workmen's Compensation Act. In 1956 this section was amended in material respects. Some of these amendments are considered in the ruling upon the petition for rehearing.

In adoption of this contract each party, if both elected to comply with the amended Act, obtained a substantial advantage as to claims arising from silicosis. The employer would not be subject to the possible burden of a large recovery. It would be relieved of further liability. KRS 342.015(1). The employee would have the advantage of a swifter and less technical remedy than that given by litigation at common law, although he would also have the possibility of a smaller recovery. There thus was a mutual advantage and consideration for the employer's agreement to provide the benefits of the Workmen's Compensation Act as to silicosis for all employees.

The contract covering silicosis was executed July 1, 1947. At no time prior to March 1, 1952, did Eastern elect to operate under the amended statute nor did it post any notice that it had so elected. On that date it addressed a letter to the Workmen's Compensation Board of Kentucky in which it stated that it voluntarily subjected itself to the provisions of KRS 342.316. Possibly this letter, so long delayed, substantially complied with the statute (see KRS 342.390) but it did not comply with the contract. Notice of the employer's letter was not posted at the mine nor served upon Reliford or the UMW agent who was urging Reliford's claim with Eastern's claim agent.

It is contended that Reliford did not give notice of his disability within the time limitations of various provisions of the applicable statute. The District Court so held. KRS 342.005(2) and KRS 342.316(2), under familiar rules, are read into and become a part of the contract. However, in certain respects we think the statute has been misinterpreted on the question of notice. The paragraph cited requires that notice of disability or death due to silicosis be given "the employer" as soon as practicable after the employee has knowledge and requires that claim be made "upon the employer" within three years from the last injurious exposure to silica dust. Unless such notice is given, right to compensation for silicosis is forever barred.

Reliford, within a short time after he left Eastern's employ, was examined by three physicians and X-rayed at four hospitals. He was told by all doctors that he was suffering from silicosis. Prompt notice of this fact was given to Eastern by Reliford himself, who talked personally with Eastern's claim agent a number of times. His claim upon the employer was supported by UMW's agent who, as the District Court stated, "importuned the defendant in behalf of the plaintiff." During 1951, Eastern arranged to have Reliford take a physical examination with its own doctor, who reported that Reliford did not have silicosis. At the hearing herein the company doctor stated under oath that Reliford's symptoms, as shown by various X-rays introduced in evidence, taken in 1951, were consistent with the first stages of the disease. Eastern's agent, after receiving a number of letters from the UMW agent, in a letter sent October 23, 1952, refused Reliford's claim on behalf of Eastern. The letter did not rely upon the point that the claim was not timely filed, but merely declared that Reliford was not disabled because of silicosis. When the letter of rejection from Eastern's claim agent was sent the one year provided for asking a hearing before the

Workmen's Compensation Board had already expired. KRS 342.270.

At a point not definitely fixed in time Reliford's attorney made application to the Workmen's Compensation Board of Kentucky, but was informed by the Board that it did not have jurisdiction because Eastern had not filed an election to operate under the silicosis provision of the Workmen's Compensation Act. The action of the Workmen's Compensation Board in refusing to take jurisdiction of the case is in accord with Kentucky decisions under KRS 342.005 (2). The Court of Appeals of Kentucky under this provision holds that if either the employer or employee does not manifest his election in accordance with the terms of the statute they are not applicable, even though both intended to operate and believed they were covered. McNeese Construction Co. v. Harris, Ky., 273 S.W.2d 355. Both employer and employee had to register. McCune v. Wm. B. Pell & Bros., 192 Ky. 22, 232 S.W. 43. Reliford therefore took no further steps before the Workmen's Compensation Board and this action was filed March 6, 1956. On April 8, 1957, plaintiff died of silicosis and his wife, Margie Reliford, as administratrix of plaintiff's estate, was substituted in the action.

The District Court denied relief and dismissed the complaint for two principal reasons. One, it held that plaintiff and defendant were under an equal obligation to enter into the voluntary joint application in writing required under KRS 342.-316 and that, since plaintiff had failed to make application for benefits of the statute, defendant was not bound by its contract. Two, the court also held that Reliford's claim was barred by the one year provision of the statute of limitations applicable to personal injury.

We think that Reliford's obligation under this record was not equal to that of Eastern. Eastern, in an express written agreement intended to apply to hundreds of employees, had promised that it would "provide" the protection and coverage of the benefits under the Workmen's Compensation and Occupational Diseases Law, whether compulsory or elective. The indispensable first step in fulfilling its agreement was that Eastern itself should elect to be governed by the silicosis provisions of the Workmen's Compensation Act. A statutory form was provided for the employer for that purpose. KRS 342.390. Eastern could not obtain the result that it had promised unless and until it applied for coverage under the occupational diseases provisions of the Workmen's Compensation Act. If Reliford did not join in the election, Eastern would be released from its promise as to Reliford. But Eastern was bound under the contract to attempt to perform its positive obligation.

The District Court held in effect that, since Reliford had not filed his election after being apprised of his physical condition, Eastern was released from the necessity of making timely election. We think this ruling is erroneous. Under the contract Eastern was placed under a positive obligation by its promise to several hundred employees to proceed under the Workmen's Compensation statute immediately after July 1, 1947. The way to proceed was promptly to file an election to operate under the Act.

Moreover, Reliford had already performed his essential obligations under the contract. He had joined the union and in so doing had assented to the manifold provisions of the contract which would govern his working conditions, including even the rent that he might pay for housing, and an obligation to help prevent local strikes.

Under the silicosis statute, KRS 342.-005(2), Reliford was not required to file his election (if he did elect), first or simultaneously with Eastern. The use of the words "joint, voluntary application" in 342.005(2) does not affect this conclusion.

The statute does not contemplate simultaneous election by employer and employee. Neither the word "joint," which Webster defines as "united; combined," prescribes the precise time at which the union or combination shall take place, nor is the time elsewhere stated. The

form required of the employer under KRS 342.390 states "This election is effective as of the day of ...... and covering (here insert name of industry, business or operation on which the election is made)." This form contemplates an election which shall cover not merely one controversy between an employer and one employee, but a number of controversies between the employer and all his employees. It is filed by the employer when he subjects himself to the Act. But the individual employees will hardly have silicosis simultaneously with the employer's election nor simultaneously with each other. Thus, in this case, if Eastern, as it promised, had subjected itself to the Act within a month of the execution of the contract of July 1, 1947, Reliford could not have joined in the election at that time for he did not contract silicosis until 1951.

■ "Joint" in the statute means that the employee who has contracted silicosis, if he chooses, shall join in electing to proceed under the Act to which the employer has already subjected himself. There may be years between the act of the employer and the act of the employee, but when the election is filed by the employee, as to him it becomes "joint."

■ Eastern prevented any joint election by Reliford (1) by not filing an election in accordance with its promise prior to Reliford's contracting silicosis; (2) by not notifying Reliford, either by posting at the mine or other notice, when it did file. It follows that neither under the contract nor under the statute had Reliford failed to perform. Since no time for performance was specified in the labor contract Eastern was required to file its election within a reasonable time. Four and one-half years we think was not a reasonable time in which to fulfill a promise of this nature.

■■ The contract declares that refusal "shall be deemed a violation of this Agreement." Eastern contends that it did not refuse to carry out the contract, that there could be no refusal without demand, and that neither Reliford nor the union demanded performance. We think

Eastern's failure for four and one-half years from July 1, 1947, to March 1, 1952, to take the steps required by the contract was tantamount to a refusal. While an obligation for the payment of money in certain cases arises only upon demand, when a party is obligated to perform a certain act or acts, failure to act is often held equivalent to a refusal. As held in Hicks v. Conn, 270 Ky. 344, at page 348, 109 S.W.2d 811, 813:

"The word 'refuses,' like many other words in our language, is elastic and is of somewhat varied signification according to the context in which it is found and the nature of the subject-matter to which it refers. Refusal usually implies a previous demand or request or the existence of circumstances equivalent thereto. But, as stated in Mackey v. United States, 6 Cir., 290 F. 18, to 'refuse' does not necessarily imply to deny deliberately a previous demand. One of the general definitions of 'refuse' is to 'withhold.' Webster's New International Dictionary. The word has been given judicial construction as being a synonym of failure. We held in Thomas v. Commonwealth, 74 S.W. 1062, 25 Ky.Law Rep. 201, that it was not error to instruct that, if defendant 'failed' to leave the house of deceased, the latter had the right to use such force as was necessary to eject him instead of using the word 'refused.' The failure to give bond in a bastardy proceeding was held equivalent to a refusal to do so. Rudulph v. State, 16 Ga.App. 353, 85 S.E. 365. Where a municipal board took no action upon a claim against the county, it was held to be a refusal to allow it. Board of Supervisors of Jefferson County v. Lessing, 129 Miss. 1, 91 So. 697. Failure to file a corporation's report in time required by law constitutes a refusal to do so. Sherman v. Finance Corporation, 78 Colo. 330, 241 P. 722. The failure of a property owner to lay sidewalks within the time prescribed in an order requiring

their construction and with which he had been served was held to amount to a refusal within the meaning of the statute providing that the city could have same done if the owner refused to lay the sidewalk. City of Bluefield v. McClaugherty, 64 W.Va. 536, 63 S.E. 363."

See also Ennis v. Adkins, 274 Ky. 121, 118 S.W.2d 175.

Under the contract demand was required neither from Reliford nor from the union in order to establish violation of the contract by Eastern.

Eastern was also in default in carrying out the second important provision of the paragraph involved. It failed to fulfill its promise to post "at the mine" notice of compliance with this section of the contract. It did not, as it had under the original Workmen's Compensation Act, make it easy for employees to signify their acceptance of the statute by signing the proper form of assent.

The purpose of contracting for posting at the mine notice of the employer's compliance, that is, of its election to be subject to the silicosis Act, was not only to inform the employees of the compliance, but also to alert the employees to the action required from individual miners. The notice, properly posted, would have put the employees upon inquiry as to their rights and obligations. This would have secured the cooperation between employer and employee called for by KRS 342.316. The notices and forms arranged to be put out by the Workmen's Compensation Board would naturally have been made available at the plant. KRS 342.430.

If Eastern had posted notice as required by the contract this case might have had a very different history. As a result of Eastern's complete failure to perform from July 1, 1947, to March 1, 1952, neither its own claim agent nor the union agent proceeded in Reliford's case on the basis of the application of the silicosis provisions of the Workmen's Compensation Act. Eastern's agent said he did not know of the posting of notice under the agreement. So far as this record shows Eastern, after its communication of March 1, 1952, to the Workmen's Compensation Board, said nothing either to Reliford or to his union representative to the effect that Eastern had subjected itself under the Act. The record shows without dispute that both specific provisions of the contract were breached by Eastern. When, in March, 1952, Eastern decided to take action, it wrote an informal letter to the Workmen's Compensation Board to that effect. Reliford's claim had then been pending in its office since the summer of 1951. Eastern sent a copy of this letter to the executive secretary of The Operators' Association, to its claim agent at the mine, and to the general manager at Eastern. This record shows that the matter was never called to Reliford's attention nor to the attention of the union agent negotiating with Eastern's claim agent. This was not the equivalent, either in purpose or effect, of a proper posting of notice at the mine that Eastern was subjecting itself to the silicosis provisions of the law. Eastern's excuse for the long delay, made by its president, is that it "overlooked" the provision of the contract involved here. This constitutes no legal justification.

■ The District Court held that Reliford was barred under the silicosis statute because he did not make a claim before the Workmen's Compensation Board within one year of his having silicosis and within three years of his last injurious exposure. But these provisions have no application here because, as the Court of Appeals of Kentucky held in McNeese Construction Co. v. Harris, supra [273 S.W.2d 357] "If either the employer or the employee rejected or did not manifest his election in accordance with the terms of the statute, they were not applicable. * * *"

■ A more difficult question is presented as to the holding that the case is barred because it is an action for personal injury and the Kentucky-one year statute applies. Injuries to the person which are joined with or grow out of certain forms of contract have been held by the

Court of Appeals of Kentucky to be barred under this provision of the statute of limitations. KRS 413.140. This is under the general rule that all actions, the real purpose of which is to recover for an injury to the person, whether based upon contract or tort, are governed by the statute of limitations which limits the time in which actions "for an injury to the person" may be brought. This doctrine has been applied in a number of Kentucky decisions. Howard v. Middlesborough Hospital, 242 Ky. 602, 47 S.W.2d 77; Scott Tobacco Co. v. Cooper, 258 Ky. 795, 81 S.W.2d 588, including a silicosis case, Columbus Mining Co. v. Walker, Ky., 271 S.W.2d 276. The same conclusion was reached by this court in Finck v. Albers Super Markets, Inc., 6 Cir., 136 F.2d 191, 193, construing the Kentucky statute of limitations for damages growing out of physical injuries. Unquestionably the complaint, with its reliance upon the express contract and its allegations, sustained by the record, that Eastern has violated this agreement, is an action on a contract, but Reliford prays for money recovery for disability arising from silicosis.

We see considerable difference between the situation presented here and those presented in cases of claimed malpractice or negligence which were the gist of the several actions as in the cases cited. Reliford had performed under the contract and might well have filed an election to operate under the Act if he had received notice, through posting at the mine or otherwise, that Eastern had elected so to operate. Reliford's futile inquiry to the Workmen's Compensation Board certainly indicated his desire to take advantage of the Workmen's Compensation procedures. Due to Eastern's failure until March 1, 1952, to elect and its failure at any time here involved to post notice at the mine as required under the contract, Reliford was misled by Eastern as to his remedy. When on March 1, 1952, Eastern mailed its letter of election to subject itself to the silicosis provisions of the Workmen's Compensation Act the bar of the one-year limitation had not yet fallen. On October 23, 1952, the date when Eastern's claim agent denied the claim made to Eastern, the bar of the one-year statute had fallen. The inquiry that Reliford's counsel made to the Board was made to a Board without jurisdiction (1) because Eastern had failed to make timely election to come under the Act; (2) because Eastern had failed to notify Reliford of its election in time for him to act.

We think that the contract between Eastern and its employees involved more than a mere action for personal injuries. It involved the adoption at the Hardy mine of a particular method of dealing with a situation vital to labor and management. The method of swift and flexible administrative hearing made available in occupational disease cases was planned to supersede the clumsy process of the common law and the unsatisfactory use of continually delaying negotiations between the union steward and company claim agent, such as those demonstrated herein. Moreover, the purpose of the Workmen's Compensation enactments included, so far as practicable, the elimination of common-law actions for personal injury growing out of industrial operations. 58 Am.Jur., Workmen's Compensation, 572, Section 2. Reliford's claim was not only for the modest compensation provided by the Act. It was for medical, surgical and hospital services which Eastern would have been required to afford Reliford after it complied with the Act and Reliford joined. KRS 342.020. It was for the payment of the moderate recovery allowance under the Act, not in a lump sum after the miner had died, but in weekly payments beginning on the first payday after seven days after the occupational disease disability. KRS 342.040. It was for the right to have a hearing of the case in a specific nontechnical manner before a Board specially chosen for this purpose, which would control and make allowance for attorneys' fees. Reliford was seeking as to himself the enforcement of the contract solemnly entered into by Eastern for the benefit of several hundred men

at the mine and also for Reliford, a contract not carried out for at least four and one-half years.

■ We think the employer's admitted conduct amounted to a breach of the collective bargaining contract which had been made for employee Reliford's benefit, and that payments which would have accrued under the Workmen's Compensation Act if the employer's obligation had been performed provide a minimum measure of provable damages proximately resulting from the breach. Therefore, the 15-year statute of limitations applies.

The instant case was tried before Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972, decided June 3, 1957, was announced. A previous Supreme Court decision, Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 348 U.S. 437, 75 S.Ct. 488, 99 L.Ed. 510, decided March 28, 1955, had held that the federal court did not have jurisdiction of an action for unpaid salaries claimed to be due under a collective bargaining agreement.

We recognize that the Lincoln Mills case, supra, held that an action by a union to compel specific performance of an arbitration clause in a collective bargaining agreement constitutes an action to enforce federal rights and that the substantive law to be applied under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a) is federal law. If, under the doctrine of the Lincoln Mills case, federal substantive law for the enforcement of collective bargaining contracts, fashioned "from the policy of our national labor laws," is properly to be applied in the case at bar instead of the contract law of the state, our conclusion would not be changed. [See 71 Harv.L.Rev. 1169 (1958).]

The case turned upon the statute of limitations which, although it was the statute of Kentucky, was required by long settled federal law to be resorted to herein.[2] In the absence of federal limitations established by Congress, the Supreme Court of the United States has repeatedly held that the state statute of limitations controls. Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Rawlings, Receiver, v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605; Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602.

■ Since the Congress embodied in Section 301(a) of the Labor Management Relations Act no statute of limitations, under the established federal rule the appropriate state statute would in any event be applied. The District Court's error was not in applying the Kentucky statute but, in our opinion, for reasons given above, in applying the one-year limitation covering injuries to the person rather than the fifteen-year limitation applicable to written contracts.

The judgment of the District Court is reversed and the case is remanded for further proceedings in accordance with this opinion.

SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).

As held by the majority opinion, this action would be barred by the statute of limitations if it was treated as an action for personal injuries. There is no valid claim under the Workmen's Compensation Act because the parties did not affirmatively elect to subject themselves to the provisions of the Act. McNeese Construction Co. v. Harris, Ky., 273 S.W.2d 355. In order for the appellant to recover, the action must be considered as one for damages resulting from breach of contract.

2. Bridges v. F. H. McGraw & Company, Ky., 302 S.W.2d 109, and Dick v. International Harvester Company, Ky., 310 S.W.2d 514, do not involve any question of limitations. The Dick case also construes an amendment to the Kentucky Workmen's Compensation Act enacted subsequently to the sections involved herein.

I am not in agreement with my colleagues in their ruling that the appellee breached its contract obligation. That obligation was to "provide the protection and coverage of the benefits under Workmen's Compensation and Occupational Disease Laws, whether compulsory or elective, existing in * * *" Kentucky. In Kentucky, coverage under the statute was optional on the part of both the employer and employee. McCune v. Wm. B. Pell & Brother, 192 Ky. 22, 27, 232 S.W. 43. In my opinion, this contract provision eliminated any option on the part of the employer not to operate under the Act. But it could not and did not change in any way what the statute required to be done by both employer and employee in order to make this provision effective. It was still necessary for both the employer and the employee to formally elect to operate under the Act. Under Section 342.005(2), Kentucky Revised Statutes, as it then existed, coverage with respect to the disease of silicosis was obtained only by the "joint, voluntary application to the board, in writing" of the employer and the employee electing to operate under the provisions of the Act. The obligation resulting from the contract and the statute was accordingly a joint obligation. Unilateral action on the part of the employer would not have made coverage effective. McNeese Construction Co. v. Harris, supra, Ky., 273 S.W.2d 355. Lack of coverage under the Act resulted from the failure to take joint action, not the failure of the employer to take unilateral action. It is a settled principle of contract law that where no fixed time is provided for performance and the obligations of the parties are joint or concurrent, neither party is in default in failing to perform until requested so to do by the other party to the contract, accompanied by a tender of performance. Morris Shoe Co. v. Coleman, 187 Ky. 837, 841, 221 S.W. 242; Morgan v. Patillo, 5 Cir., 297 F. 140, 143–144; In re Independent Distillers of Ky., D.C.W.D.Ky., 34 F.Supp. 708, 712. Reliford did not elect to operate under the Act. Nor did he ever make any request of the appellee that the necessary joint application be made to the Board. In view of Reliford's failure to make the necessary election and his failure to request the appellee to execute the joint application with him, I do not think that the failure of the parties to have the coverage in effect can properly be construed as a refusal on the part of the appellee to provide the coverage, or as a breach of its contract to provide such coverage. Nor can it be said as a matter of law that if the appellee had taken unilateral action, it would have resulted in Reliford likewise making the necessary election. As the Court pointed out in Greene v. Caldwell, 170 Ky. 571, 580, 186 S.W. 648, 651, the right of election or non-election is left with the employee. "What the employé will do when he comes to decide whether to accept or reject the act depends on the viewpoint from which he weighs for himself its benefits and disadvantages."

If we assume that appellee breached its contract obligation, we are faced with a troublesome question of damages. Although Reliford lost his right of coverage under the Act, he retained his common law right of action against his employer, which he would have relinquished if he had accepted the provisions of the Act. His enforcement of this right could have resulted in a recovery of as much as or even more than the benefits provided by the Act, in which event he would have suffered no damage at all. Liability, if it existed, was expressly fixed and limited under the Act in contrast to the unlimited liability in a common law action for damages. Since Reliford failed to avail himself of his common law right of damages, it is pure speculation at the present time to attempt to determine what, if any, damages he may have suffered by appellee's alleged breach of contract. Such damages can not be made the basis of a recovery. Western Union Telegraph Co. v. Hall, 124 U.S. 444, 8 S.Ct. 577, 31 L.Ed. 479; Boatright v. Steinite Radio Corporation, 10 Cir., 46 F.2d 385, 390–391; Holliday v. Spahr, 274 Ky. 556, 561, 119 S.W.2d 656. I

recognize the rule that in cases where the fact of damage is certain, the uncertainty of the amount does not prevent a recovery. But where the fact of damage is itself uncertain and speculative, as in the present case, there can be no recovery other than nominal damages. Compare: Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688, 66 S.Ct. 1187, 90 L.Ed. 1515.

I would affirm the judgment of the District Court.

### On Petition for Rehearing.

Before ALLEN, Chief Judge, MILLER, Circuit Judge, and MATHES, District Judge.

ALLEN, Chief Judge.

█ In its brief upon petition for rehearing appellee announces that it abandons the theory on which it tried the case below. It is the practically universal rule that this cannot be done. See: 3 Am.Jur. 35, Section 253, and 3 Am.Jur. 372, Section 830 (Appeal and Error), and many decisions of the Supreme Court of the United States and of the various states cited therein; Virginian Railway Company v. Mullens, 271 U.S. 220, 46 S.Ct. 526, 70 L.Ed. 915.

The reason advanced for appellee's drastic shift in viewpoint is that the Supreme Court of Kentucky in Dick v. International Harvester Company, 310 S. W.2d 514, has changed the applicable law. It is said that under Vandenbark v. Owens-Illinois Glass Company, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327, we are compelled to review the case under the law as it now is.

█ A material factual difference between the Dick case and the instant case is that the employer herein expressly promised to post "at the mine" notice of compliance with its agreement to "provide the protection and coverage of the benefits under Workmen's Compensation and Occupational Disease Laws, whether compulsory or elective * * *." Appellee concedes that it did not comply with this important term of the contract.

As a result of this material breach by appellee, Reliford was denied the practical notice essential to the preservation of his rights.

As set out at length in the Dick case, supra, the law of Kentucky up to the amendments of 1956 to K.R.S. 342.005 (1) and (2) required a special election by the employer in order to operate under the silicosis provisions of the Workmen's Compensation Act. (Reliford had retired from active service in 1951 because of silicosis.) While the amendment of 1952, K.R.S. 342.395, 1953 edition, provided that an employee by his contract of hiring was deemed to have accepted all provisions of the Workmen's Compensation Act and to be bound thereby unless he filed written notice with the employer to the contrary, this amendment specifically provided that the section was in force "In the event an employer elects to operate under this chapter." Appellee violated its express contract made July 1, 1947, not only to provide the benefits of the Workmen's Compensation Act, but to post notice at the mine. Although appellee finally on March 1, 1952, made an informal election by letter to the Board to comply with the silicosis provisions of the Act, while Reliford's case was pending before its claim agent, appellee neither notified Reliford, Reliford's union agent, nor appellee's own claim agent, of the existence of that letter, and never during the period involved posted any notice at the mine for the information of the employees. Under the law then in force it is hard to conceive of action by the employer better calculated to deceive and do detriment to the employee in respect to providing "the protection and coverage of the benefits under Workmen's Compensation and Occupational Disease Laws" for the employee. We think this action of appellee constituted an instance of the "detriment or deception" referred to in the Dick case, supra, 310 S.W.2d 518. When informed by the executive secretary of the Workmen's Compensation Board, in accordance with the then existing law that (presumably because of

lack of an election by appellee) it had no jurisdiction, Reliford naturally concluded to seek his alternative remedy. Having no notice that appellee had elected, Reliford was not required to file written notice of rejection.

■ The alternative remedy was to bring an action at common law. The fact that Reliford chose to sue in contract rather than in tort was immaterial. K.R.S. 342.415, still in effect, recognizes that an employee who does not elect to operate under the Act may file a suit at law. Appellee concedes that Reliford had this alternative remedy. Since Reliford had a choice between the remedy under the Workmen's Compensation Act and under the common law, he was not compelled, either by the contract with appellee or under the law of Kentucky, to come within the operation of the statute. Greene v. Caldwell, 170 Ky. 571, 186 S.W. 648. His action on the contract was filed prior to the amendment of August 1, 1956, K.R.S. 342.005(1) and (2), and was filed while the law still required, as pointed out at length in the Dick case, a special election to operate under the Act to be made by joint, voluntary application. Dick case, supra, 310 S.W.2d 515.

That Reliford was compelled to exhaust the remedy under the Workmen's Compensation Act before filing suit, when he had chosen the remedy of filing an action at law and had not chosen the remedy under the Act, seems to a majority of the court to assert a proposition unsound in principle and supported by no authority. We are cited to no case that holds that when a plaintiff has two alternative remedies he has to exhaust the remedy he does not choose to adopt before choosing to adopt the other.

As to the case presented herein, the Dick decision did not change the existing law. On the contrary, it declared that the law followed by Reliford was in existence up to and beyond the time that he filed his suit on the contract. It follows that Vandenmark v. Owens-Illinois Glass Company, supra, and the line of cases represented by Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, while they declare well-established rules of law, are not controlling here.

The majority adheres to its previous decision.

SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).

At the time of the filing of the original briefs on this appeal, the Kentucky Court of Appeals had not decided the case of Dick v. International Harvester Co., 310 S.W.2d 514. At the time of oral argument by counsel before this Court the ruling of the Court in that case was under reconsideration upon petition for rehearing and had not been published. Appellee's position taken in its original brief and urged upon us in oral argument was without consideration of the effect which that case had upon the law of Kentucky with respect to the issues involved in this case. It has materially changed the Kentucky law applicable to the case.

Appellee's present petition for rehearing frankly states that by reason of the ruling of the Kentucky Court of Appeals in Dick v. International Harvester Co., supra, there is a necessary change in the position which he took on behalf of the appellee by brief and argument hereinabove referred to. His new position in the case is presented in the present petition for rehearing. Although the Dick case had some consideration by this Court in making its earlier ruling, the Court in doing so did not have the benefit of appellee's change of position and argument in support thereof, which is now urged up us. This requires a reconsideration of the case at the present time from that viewpoint giving full consideration to the effect of Dick v. International Harvester Co., supra. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Doggrell v. Southern Box Co., 6 Cir., 208 F.2d 310.

As held in Virginian Railway Co. v. Mullens, 271 U.S. 220, 46 S.Ct. 526, 70 L.Ed. 915, a plaintiff may not, after

bringing and trying his case on the theory stated in the complaint, thereafter on review change to another theory of liability, which the defendant was not required to meet in the lower court. It is also the rule that generally an appellant may not rely for *reversal* in an appellate court on grounds not urged by it in the lower court. Helvering v. Wood, 309 U.S. 344, 348–349, 60 S.Ct. 551, 84 L.Ed. 796. However, such a rule does not apply to a defendant who has been successful in the lower court and seeks to *affirm* the judgment on appeal for legal reasons not relied upon by the trial court in rendering judgment in his favor. As stated in Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224, "In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." See also: J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36; Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626; Jaffke v. Dunham, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314. The rule has been heretofore applied by this Court. Mills Novelty Co. v. Monarch Tool & Mfg. Co., 6 Cir., 49 F.2d 28, certiorari denied 284 U.S. 662, 52 S.Ct. 37, 76 L.Ed. 561; American Eagle Fire Ins. Co. v. Gayle, 6 Cir., 108 F.2d 116, 117, certiorari denied 309 U.S. 686, 60 S.Ct. 809, 84 L.Ed. 1029; Paine & Williams Co. v. Baldwin Rubber Co., 6 Cir., 113 F.2d 840, 844; Cold Metal Process Co. v. McLouth Steel Corp., 6 Cir., 126 F.2d 185, 189. In the present case the appellee was the defendant in the trial court and is seeking to affirm the judgment of that court on legal grounds available to him on the record, although different from those relied upon by the District Judge. I am of the opinion that it is entitled to do so.

I construe Dick v. International Harvester Co., supra, as holding (1) the execution by the employer of a collective bargaining contract with the union which obligates the employer to comply with the Workmen's Compensation and Occupational Disease Laws of the State of Kentucky is in itself as a matter of law an election to operate under those laws, making it unnecessary for the employer to execute and file with the Board the joint application for coverage under the Act heretofore required, and (2) under the Amendment to the Workmen's Compensation Act of June 19, 1952, one who may be employed at the time of the acceptance of the provisions of the Act by the employer shall be deemed to have accepted all the provisions of the Act, unless he shall have filed written notice with the employer to the contrary. Section 342.395, Kentucky Revised Statutes.

This amendment was in effect on October 23, 1952, at which time appellee denied in writing Reliford's claim for compensation on account of silicosis, taking the position that the evidence did not show that he was disabled on account of silicosis. The amendment was in effect at the time shortly thereafter when Reliford's attorney contacted the Workmen's Compensation Board about filing a claim for compensation under the Act. The Executive Secretary of the Board advised Reliford's attorney that because appellee had not made application for coverage for occupational disease the Board lacked jurisdiction. Under the ruling in Dick v. International Harvester Co., supra, and the Amendment of June 19, 1952, this construction of the law was not correct and the Board did have jurisdiction of the claim. We are required to review the case in accordance with the law as it now is. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327; Doggrell v. Southern Box Co., supra, 6 Cir., 208 F.2d 310; United States v. Killian, 7 Cir., 246 F.2d 77, 82. The time limitation for filing a claim was at that time three years, although it was shortened to one year in 1956. Sections 342.185, 342.316, Kentucky Revised Statutes. Accordingly, there was no breach of appellee's contract obligation to provide this coverage.

The failure to obtain compensation under the Act was because Reliford did not press his claim. Reliford accepted the statement of the Executive Secretary of the Board. Reliance upon this statement is not chargeable to the appellee. No claim for Workmen's Compensation benefits was filed with the Board. This failure to press his claim is not excused by the fact that at the time it did not appear worthwhile. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–52, and cases cited in notes 9, 10 and 11 on page 51, 58 S.Ct. 459, on pages 463, 464, 82 L.Ed. 638. See: Sunal v. Large, 332 U.S. 174, 181, 67 S.Ct. 1588, 91 L.Ed. 1982; Ackermann v. United States, 340 U.S. 193, 197–198, 71 S.Ct. 209, 95 L.Ed. 207. Counsel for claimant in Dick v. International Harvester Co., supra, was confronted with a similar problem, but, nevertheless, pressed his claim, unsuccessfully before the Board, but with ultimate success before the Court of Appeals.

If the foregoing view of the case is correct, Reliford did not have available to him the alternate remedies of pressing his claim before the Board or filing an action at law either for breach of contract or tort. If the Board had jurisdiction of the claim, his exclusive remedy was before the board. Section 342.015, Kentucky Revised Statutes.

I do not think that appellee's failure to post at the mine notice of compliance with its agreement to provide protection for occupational disease constitutes a legal basis for the present action. Considered in the light of what the law was at the time the agreement was made, the notice of compliance referred to notice of the expected formal application by appellee to the Board to operate under the provisions of the Act. Since coverage under the Act, insofar as Reliford's claim is concerned, results from operation of law, effective in March, 1958, by virtue of the ruling in Dick v. International Harvester Co., supra, rather than by a formal application contemplated by the agreement, a notice of compliance could not have been legally posted until after the decision in Dick v. International Harvester Co., supra, in March, 1958. The failure to post a notice did not affect Reliford who, notwithstanding the failure to post such a notice, knew what the facts were, namely, that at the time his attorney contacted the Board in October or November, 1952, appellee had executed a contract with the union obligating it to provide protection for occupational disease, but had not filed a formal application for it. There was nothing additional that appellee could give notice of. Failure to post a notice of compliance at the mine was not the cause of Reliford's failure to obtain an award of compensation from the Board. The cause of the loss of compensation was appellee's failure to make formal application for coverage, which Reliford knew about, making notice of that fact unnecessary, and Reliford's reliance upon what was thought to be the law of Kentucky at the time, which reliance later proved to be not justified. So the real question in the case remains the same, not the failure to post a notice but the alleged failure to provide the coverage.

There is another aspect of this case which requires consideration. The collective bargaining contract contained provisions for the settlement of local and district disputes between the operators and the miners, starting with conferences between the aggrieved party and the mine management, and if not there settled, to be carried on through successive higher levels. This is a contract obligation. It excludes alternative remedies. Appellee's answer sets out these provisions and alleges the failure on the part of Reliford to comply with this contract obligation before resorting to court action. Such failure appears to constitute a legal bar to the maintenance of this action. Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 662, 73 S.Ct. 906, 97 L.Ed. 1325; Tharp v. Louisville & N. R. Co., 307 Ky. 322, 325, 210 S.W.2d 954; Barker v. Southern Pac. Co., 9 Cir., 214 F.2d 918.

I am of the opinion that the petition for rehearing should be granted and the judgment of the District Court affirmed.