NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0026n.06
Filed: January 12, 2005

**Nos. 03-1164 / 1779**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| O'NEILL MUIRHEAD; | ) | |
| LINDA MUIRHEAD, | ) | |
| | ) | |
|     Plaintiffs-Appellants, | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR** |
| v. | ) | **THE EASTERN DISTRICT OF** |
| | ) | **MICHIGAN** |
| COUNTY OF WASHTENAW; | ) | |
| DANIEL J. MINZEY; | ) | |
| STEVEN COCKRELL; | ) | |
| BRENDA K. GISSENDANNER; | ) | |
| DARLENE CARVETH, | ) | |
| | ) | |
|     Defendants-Appellees, | ) | |
| | ) | |
| BRENDA K. GISSENDANNER; | ) | |
| DARLENE CARVETH, | ) | |
| | ) | |
|     Defendants-Appellants. | ) | |

Before: MARTIN and BATCHELDER, Circuit Judges, and JORDAN, District Judge[*]

**LEON JORDAN, District Judge.** Plaintiffs-Appellants, O'Neill Muirhead ("Muirhead") and Linda Muirhead, appeal the district court's orders granting summary judgment in favor of Defendants-Appellees. In addition, Defendants-Appellants Brenda

_____

[*] The Honorable Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

Gissendanner ("Gissendanner") and Darlene Carveth ("Carveth") appeal the denial of their motion for Rule 11 sanctions. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The facts underlying these appeals are sufficiently set forth in the district court's summary judgment orders and will be only briefly summarized herein. On the evening of March 25, 2001, Defendant-Appellee Steven Cockrell ("Cockrell"), who is a sheriff's deputy employed by Defendant-Appellee County of Washtenaw ("Washtenaw"), entered the fourteen-acre farm of Muirhead's father to search for three missing horses belonging to Gissendanner and Carveth. Muirhead's home adjoins his father's farm. Cockrell, accompanied by Gissendanner and Carveth, entered the farm without a warrant.

Muirhead became aware of the Defendants' presence on his father's property, and a physical altercation ensued between him and Deputy Cockrell. Muirhead rapidly approached the Defendants while speaking in a loud voice. His initial contact with Cockrell was, admittedly, turning a corner and coming "nose to belly button" with the officer.[1] Cockrell restrained and handcuffed Muirhead and placed him in the patrol car for a brief time. According to all witnesses other than the Appellant, Muirhead (who weighs 250 pounds) was belligerent and the aggressor. Muirhead's version of the incident differs. He claims that

---

[1] Muirhead's counsel, in his summary judgment arguments to the district court, acknowledged that Muirhead "was mad, waving his hands, using foul language . . . [and] ran right into Cockrell[.]"

Cockrell severely beat him, without cause, resulting in bruises, contusions, closed-head injury, depression, and suicidal ideation.

The Muirheads then filed suit in the district court, alleging a catalog of constitutional and state law violations. Following the withdrawal of a number of their claims, the Muirheads' remaining amended complaint alleged violations of their Fourth and Fourteenth Amendment rights by Defendants-Appellees Washtenaw, Cockrell, and Daniel J. Minzey. The amended complaint also contained defamation and civil conspiracy claims against Gissendanner and Carveth. By separate orders, the district court granted Defendants' motions for summary judgment on all counts. Gissendanner and Carveth subsequently moved for sanctions pursuant to Fed. R. Civ. P. 11. Their motion was denied.

On appeal, the Muirheads argue that the district court erred in granting summary judgment on each of their claims. Gissendanner and Carveth appeal the denial of their Rule 11 motion.

## II. ANALYSIS

A district court's denial of Rule 11 sanctions is reviewed for an abuse of discretion. *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 778 (6th Cir. 1996). A grant of summary judgment is reviewed *de novo*. *See id.* at 774. Summary judgment is appropriate when there is no genuine issue as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must determine

3

whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *See id*. at 251-52.

## 1. Unlawful Entry

As noted, the events at issue in this appeal took place on the farm belonging to Muirhead's father. Muirhead argues that he has standing to assert a protected property interest in the farm based on the facts that: (1) he performs work on the farm; and (2) he and his brother pay the farm's property taxes as rent. However, in his deposition testimony, Muirhead acknowledged that: (1) he and his father have no formal rental agreement; (2) "I don't really rent it"; (3) the primary work he does on the farm is "take care of my dad" and "[m]ake sure he's comfortable at all times"; and (4) the property tax checks are actually written by his father and paid out of a joint account "that my [Muirhead's] name is on." Joint Appendix at 214. Based on these facts, we agree with the district court's conclusion that "Muirhead has no standing to assert an unlawful entry claim in violation of his Fourth Amendment rights because he did not have a protected property interest [in the land upon which he has based his unlawful entry charge]."

Further, the record does not support Muirhead's contention that the area of altercation is a part of the curtilage of his residence. "In order to challenge a search or seizure as a violation of the Fourth Amendment, a person must have had a subjective expectation of privacy in the place or property to be searched which was objectively reasonable." *Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001). The Fourth Amendment protects the home and its curtilage from warrantless search, but that protection does not extend to "the open fields."

4

*See United States v. Dunn*, 480 U.S. 294, 300 (1987). In identifying the parameters of a home's curtilage, "the central component of this inquiry [is] whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." *Id.* (citations and quotations omitted). Four factors to be considered are:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Id.* at 301.

Applying these factors, we conclude that the subject area is not curtilage to Muirhead's home. That the altercation with Deputy Cockrell occurred 200 yards from the residence is not favorable to Muirhead's theory. *See Dunn*, 480 U.S. at 302 (commenting that fifty yards is a "substantial distance" supporting no inference of curtilage). Muirhead cites no evidence that his home is surrounded by the same fencing that encloses his father's farm. Further, the use to which the area is put (raising and housing horses) "could not fairly be characterized as so associated with the activities and privacies of domestic life that the officers should have deemed" it a part of Muirhead's home. *Id.* at 303. Lastly, Muirhead cites no evidence that whatever fencing exists "had any function other than that of the typical ranch fence; the fences were designed and constructed to corral livestock, not to prevent persons from observing what lay inside the enclosed areas." *Id.* We therefore conclude that the subject area is more akin to "open fields." *See, e.g., Oliver v. United States*, 466 U.S. 170, 177 (1984) ("[T]he government's intrusion upon the open fields is not one of those

5

'unreasonable searches' proscribed by the text of the Fourth Amendment."). For this additional reason, the Muirheads' unlawful entry claim fails.

## 2. Civil Conspiracy

The district court summarized the Muirheads' conspiracy claim as follows: "In his Complaint, Muirhead asserts that [Gissendanner and Carveth] acted in concert with Cockrell, in his capacity as a deputy sheriff, to bring false criminal charges [horse theft] against him and to remove his personal property." Finding no evidence of a preconceived plan to engage in unlawful acts, the district court granted summary judgment.

The Muirheads did not address this issue at oral argument before this panel. In their briefs, however, they contend that the district court misunderstood the factual basis of their claim. The district court viewed the conspiracy count as an allegation of a preconceived plan existing *before*, and resulting in, the physical altercation between Muirhead and Cockrell. The Appellants now argue that the conspiracy occurred when Gissendanner and Carveth purportedly arranged to give false statements regarding Muirhead's conduct *during* the altercation, in order to have him arrested for obstructing and resisting an officer.

The Muirheads' attempted recharacterization is unavailing in light of the clear language of their amended complaint.

> 53. Defendants illegally, maliciously and willfully conspired with one another with the intent to, and for the illegal purpose of, removing Plaintiff, O'Neill Muirhead's[,] personal property and to bring criminal charges against Plaintiff, O'Neill Muirhead, *alleging that he was a horse thief*.

> 54. Defendants, in concert, conspired to bring false criminal charges against Plaintiff, O'Neill Muirhead. *The conspiracy resulted in the illegal, unlawful*

6

*and tortuous activities of Plaintiff being physically assaulted by Defendant Cockrell . . . both prior to and after being placed in handcuffs and being falsely imprisoned, <u>based upon the allegations that Plaintiff was a horse thief and had in his possession property belonging to Defendants, Carveth and Gissendanner</u>.*

Joint Appendix at 50-51 (emphasis added). As this language illustrates, the district court properly viewed the amended complaint as alleging a conspiracy in existence before the altercation between Muirhead and Cockrell. A conspiracy, as Muirhead now alleges, to give false statements regarding Muirhead's conduct *during* the altercation could not have, as the above-quoted complaint language states, "resulted in" the altercation because these alleged statements could only have been made *after* the altercation.

As Gissendanner and Carveth correctly point out, they cannot now be required to defend a claim different than the one brought before the district court. *See, e.g., Reliford v. E. Coal Corp.*, 260 F.2d 447, 457 (6th Cir. 1958). Despite the Muirheads' protestations to the contrary, the district court properly considered the relevant allegations and correctly granted summary judgment.

## C. Remaining Claims

We have studied the record and the parties' briefing as to the remaining issues on appeal (the Muirheads' claims against Washtenaw and Minzey; the Muirheads' excessive force and defamation claims; and the denial of Gissendanner and Carveth's motion for Rule 11 sanctions). We agree with the district court's well-reasoned rulings on each of these issues. Further discourse by this panel would serve no useful purpose.

## III. CONCLUSION

For the reasons stated herein, we **AFFIRM** the orders of the district court.